146 F.3d 126
 MACKLER PRODUCTIONS, INC., Plaintiff-Appellee,
v.
Frank R. COHEN, Appellant,
Turtle Bay Apparel Corp., Gotham Apparel Corp., Ron Pat
Printing, Inc., Michael Kipperman, Patricia
Kipperman, James J. Clare, Defendants.
 No. 1393, Docket 97-7789.
 United States Court of Appeals,
Second Circuit.
 Argued Feb. 19, 1998.
Decided June 22, 1998.
 
 Vivian Shevitz, Mt. Kisco, NY, for Appellant.
 Roy A. McKenzie, New York City, for Plaintiff-Appellee.
 Before: McLAUGHLIN and LEVAL, Circuit Judges, and POLLACK, District Judge.*
 LEVAL, Circuit Judge.
 
 
 1
 This is an appeal from a district court order imposing two sanctions on an attorney, one compensatory, the other punitive, for proffering perjurious testimony at trial.
 
 BACKGROUND
 
 2
 Appellant Frank R. Cohen, Esq. represented Gotham Apparel Corp., Michael Kipperman, and Patricia Kipperman in a lawsuit brought by Mackler Productions, Inc. ("Mackler") against Cohen's clients as well as Turtle Bay Apparel Corp., Ron Pat Printing, Inc., and James J. Clare. Mackler claimed that Turtle Bay Apparel or its principal Michael Kipperman ordered some $69,000 worth of sweatshirts from it in 1989, and instructed Mackler to deliver the sweatshirts to Ron Pat Printing; Mackler was never paid for the merchandise. Turtle Bay Apparel defaulted and apparently became insolvent and defunct. (JA, 699 n.4). As the case developed, Mackler advanced a theory of recovery against the remaining defendants[1] based on the contention that some or all of them owned, or controlled, Turtle Bay Apparel. According to Mackler, the defendants used Turtle Bay Apparel as a part of a scheme to defraud Mackler by having the sweatshirts delivered to Ron Pat Printing, and then converting the merchandise to their own use without paying Mackler. (JA, 44-45).
 
 
 3
 Accordingly, when the case went to non-jury trial before Judge Patterson in 1993, Mackler's case turned in part on establishing (1) the facts surrounding the receipt and subsequent disposition of the sweatshirt shipment from Mackler, and (2) the various alleged ownership and operating relationships among the individual and corporate defendants. The trial testimony of two of the defendants' witnesses is relevant to this appeal. First, Ronald Hoffman, who was an employee (and perhaps a part-owner) of Ron Pat Printing, testified that he received and signed for the Mackler shipment, and that it was subsequently passed on to Turtle Bay Apparel. (JA, 700; Blue, 7-8). Hoffman also testified about the control and ownership of Turtle Bay Apparel and Ron Pat Printing. (JA, 700-01; Blue, 8). Second, Michael Kipperman testified about his and his family's relationship to various business entities, including Ron Pat Printing and Turtle Bay Apparel. (JA, 701, 731-32; Blue, 9-10, 40-41). As part of its rebuttal case, plaintiff offered testimony that tended to contradict some of Hoffman's assertions, and the district court later found that Kipperman's testimony was perjurious.
 
 
 4
 At the close of all testimony, the court made findings of fact in favor of Mackler and against defendants Gotham Apparel and Michael Kipperman and awarded Mackler compensatory damages of $69,090 plus interest. (JA, 702). The court also stated that it was referring the issue whether Hoffman had committed perjury to the United States Attorney's office for possible criminal investigation and that it would defer considering whether sanctions should be imposed in connection with any perjury. (JA, 702; Blue, 13). By Opinion and Order dated June 14, 1994, the court awarded punitive damages also in the amount of $69,090. See Mackler Prods., Inc. v. Turtle Bay Apparel Corp., No. 92 Civ. 5745, 1994 WL 267857, at * 2 (S.D.N.Y. June 14, 1994). (JA, 287). In the opinion awarding punitive damages, the court again discussed the possibility of sanctions and concluded that "a hearing on sanctions will be held as soon as the Court's schedule permits." Id. The district court's judgment in favor of Mackler was subsequently affirmed by this Court. See Mackler Prods. v. Turtle Bay Apparel, 47 F.3d 1158 (2d Cir. Jan. 11, 1995)(table).
 
 
 5
 Meanwhile criminal perjury charges were lodged against Hoffman, who pled guilty on September 18, 1996. (JA, 703). Beginning on October 8, 1996, Judge Patterson held an evidentiary hearing on sanctions, taking testimony from, among others, Cohen and Hoffman. (JA, 706-21). In an Opinion and Order dated May 21, 1997, relying on its inherent authority, the court imposed on Cohen and Michael Kipperman a $45,000 compensatory sanction payable to Mackler and a $10,000 punitive sanction payable to the court; Cohen and Kipperman were made jointly and severally liable for both payments. See Mackler Prods., Inc. v. Turtle Bay Apparel Corp., No. 92 Civ. 5745, 1997 WL 269505, at * 16 (S.D.N.Y. May 21, 1997).
 
 
 6
 Cohen appeals from both the $10,000 punitive sanction and the $45,000 compensatory sanction.
 
 DISCUSSION
 
 7
 1. A troublesome aspect of a trial court's power to impose sanctions, either as a result of a finding of contempt, pursuant to the court's inherent power, or under a variety of rules such as Fed.R.Civ.P. 11 and 37, is that the trial court may act as accuser, fact finder and sentencing judge, not subject to restrictions of any procedural code and at times not limited by any rule of law governing the severity of sanctions that may be imposed. See International Union, United Mine Workers of America v. Bagwell, 512 U.S. 821, 831, 114 S.Ct. 2552, 2559, 129 L.Ed.2d 642 (1994) ("Unlike most areas of law, where a legislature defines both the sanctionable conduct and the penalty to be imposed, civil contempt proceedings leave the offended judge solely responsible for identifying, prosecuting, adjudicating, and sanctioning the contumacious conduct.") The absence of limitations and procedures can lead to unfairness or abuse.
 
 
 8
 For that reason, appellate courts have ruled that, in certain sanctions proceedings, the person facing imposition of sanctions should have the benefit of the procedural protections available to a person charged with a crime. (Criminal protections are generally thought to include, in addition to notice and the opportunity to be heard, the right to a public trial, assistance of counsel, presumption of innocence, the privilege against self-incrimination, and the requirement of proof beyond a reasonable doubt. See Bagwell, 512 U.S. at 826, 114 S.Ct. at 2556-57; United States v. Dixon, 509 U.S. 688, 696, 113 S.Ct. 2849, 2856, 125 L.Ed.2d 556 (1993); Satcorp Int'l Group v. China Nat'l Silk Import & Export Corp., 101 F.3d 3, 6 n. 1 (2d Cir.1996)(per curiam).) It is undisputed that Cohen did not receive the benefit of criminal procedures. The disputed issue is whether the imposition of the $10,000 sanction on Cohen required that he be afforded criminal procedural protections. Mackler contends that this sanction (like the $45,000 compensatory sanction imposed on Cohen and Kipperman) was a civil proceeding that did not require criminal procedural protections.
 
 
 9
 Although contempts and sanctions are not identical, the Supreme Court's efforts in Bagwell to distinguish between civil and criminal contempts can be helpful in identifying those sanctions that demand criminal procedural protections.
 
 
 10
 In Bagwell, a state trial court had held a labor union in contempt by reason of numerous unlawful strike-related activities, including acts of violence committed in violation of the court's orders. 512 U.S. at 824, 114 S.Ct. at 2555. The trial court had announced that it would fine the union $100,000 for each violent breach of the court's order and $20,000 for each non-violent breach. See id. at 824, 114 S.Ct. at 2555. After holding extensive hearings and finding hundreds of instances of violations, the court fined the union over $64 million, partly payable to the employer, partly to the court. See id. at 824, 114 S.Ct. at 2555-56. The employer and the union eventually settled their dispute and stipulated to withdraw the fines. The trial judge, however, left standing approximately $52 million in fines payable to the court. The trial judge had asserted that these were civil coercive fines. See id. at 825, 114 S.Ct. at 2556.
 
 
 11
 The Supreme Court nonetheless concluded that those contempts were criminal, and because of their large size, subject to the requirement of jury trial which the union had not received.
 
 
 12
 The Court listed numerous factors that supported the conclusion that the fine imposed for contempt was criminal rather than civil. The trial judge considered them coercive and thus civil because the union had been told the fines would be imposed in specified amounts for future violations of the court's orders and could thus avoid the fines by obeying the orders. In the opinion of the Supreme Court, however, that circumstance was no different from the warning of the criminal law that punishment will follow for violation of the law's commands. See id. at 836-37, 114 S.Ct. at 2562. The Court stated that the absence of a purge provision, permitting the contemnor to rid himself of the fine by a commitment to obey the court's order, argued against considering the fine to be of "coercive" civil character. See id. at 837, 114 S.Ct. at 2562. In addition, the Court found that the fines were not compensatory, but were of punitive character, see id. at 831, 834, 114 S.Ct. at 2559, 2561, because (1) they were not "calibrate[d] ... to damages caused by the ... contumacious activities," 512 U.S. at 834, 114 S.Ct. at 2561, (2) they were payable to the Commonwealth and the counties, 512 U.S. at 824-25, 114 S.Ct. at 2556, rather than to the injured party, and (3) they were extremely large, 512 U.S. at 837-38 & n. 5, 114 S.Ct. at 2562 & n. 5. Taken together, those factors persuaded the Supreme Court that the fines in Bagwell should be considered punishment for criminal contempt, rather than remedies for civil contempt.
 
 
 13
 Similar factors persuade us that, although the imposition of a sanction for litigation misconduct is not technically a conviction of a crime, the $10,000 sanction imposed in this case required the protections of criminal procedure. The sanction was not intended to be compensatory; indeed, the court imposed it in addition to a compensatory sanction and explicitly labelled it as punitive. The imposition was retrospective, by reason of past wrongful conduct; it did not seek to coerce future compliance, and no opportunity to purge was provided. The sanction was payable to the court, rather than to the injured party, further confirming its punitive nature. And the size of the required payment was substantial.
 
 
 14
 We recognize that there are significant differences between the imposition of sanctions and the punishment of criminal contempt. "The court's power to impose appropriate sanctions on attorneys practicing before it 'springs from a different source than does the power to punish for criminal contempt.' " Kleiner v. First National Bank of Atlanta, 751 F.2d 1193, 1209 (11th Cir.1985) ["internal citation omitted"]. Although the power of a court to punish for contempt may be "inherent," see Ex Parte Robinson, 86 U.S. (19 Wall.) 505, 510, 22 L.Ed. 205 (1873), the power of a United States court today to impose criminal penalties for contempt of court is provided by criminal statutes. See 18 U.S.C. §§ 401, 402.
 
 
 15
 The power to impose sanctions on attorneys is either rooted in the courts' "inherent power to protect the orderly administration of justice and to preserve the dignity of the tribunal," Kleiner, 751 F.2d at 1209, or provided by statutes and rules designated to implement the power. See e.g., Fed.R.Civ.P. 11 (sanctions in connection with papers presented to the court); Eisenberg v. University of New Mexico, 936 F.2d 1131, 1136-37 (10th Cir.1991) (finding Fed.R.Crim.P. 42 inapplicable to Rule 11 monetary sanctions); Donaldson v. Clark, 819 F.2d 1551, 1558-59 (11th Cir.1987) (en banc) (same); Warshay v. Guinness PLC, 750 F.Supp. 628, 640 (S.D.N.Y.1990) (same), aff'd, 935 F.2d 1278 (2d Cir.1991) (table); Fed.R.Civ.P. 37 (sanctions in connection with discovery); 28 U.S.C. § 1927 (attorneys' liability for expenses of vexatious litigation).
 
 
 16
 Moreover, the consequences of an adjudication of criminal contempt are different from those flowing from the imposition of sanctions. The person found guilty of criminal contempt, unlike a person on whom sanctions have been imposed, now carries a criminal conviction on his record. Furthermore, possible punishments for contempt, unlike sanctions, include imprisonment.
 
 
 17
 Nevertheless, sanctions and contempts raise certain similar concerns. Whether or not a finding of contempt is involved, unfairness and abuse are possible, especially if courts were to operate without any framework of rules or cap on their power to punish. In either case, the individual bears the risk of substantial punishment by reason of obstructive or disobedient conduct, as well as of vindictive pursuit by an offended judge. We conclude, notwithstanding the differences mentioned above, that the imposition of a sufficiently substantial punitive sanction requires that the person sanctioned receive the procedural protections appropriate to a criminal case.
 
 
 18
 We conclude that the imposition of a $10,000 punitive sanction on an individual (as opposed to a corporation or collective entity) requires such protections.[2] We therefore vacate the $10,000 sanction and remand so that the district court may consider reimposing it after giving Cohen the benefit of procedural protections employed in the criminal process.[3]
 
 
 19
 2. Although the full panoply of criminal procedure safeguards was not required with respect to the $45,000 sanction because it was compensatory, Cohen was entitled to notice of the threatened imposition of the sanction and an opportunity to be heard. See Satcorp., 101 F.3d at 6. "[A] sanctioned attorney must receive specific notice of the conduct alleged to be sanctionable and the standard by which that conduct will be assessed." Ted Lapidus, S.A. v. Vann, 112 F.3d 91, 97 (2d Cir.), cert. denied, --- U.S. ----, 118 S.Ct. 337, 139 L.Ed.2d 262 (1997). Accord Ametex Fabrics, Inc. v. Just In Materials, Inc., 140 F.3d 101, 109 (2d Cir.1998); Sakon v. Andreo, 119 F.3d 109, 114 (2d Cir.1997).
 
 
 20
 Plaintiff's counsel argues that the notice requirement was satisfied by a memorandum he circulated at the trial judge's behest to counsel of record, listing Cohen's assertedly sanctionable conduct. According to appellant, however, the affidavit of service states that it was delivered to Cohen's successor counsel, but not that it was delivered to Cohen. We have found no adequate indication in this record that this memorandum was timely delivered to Cohen, or that he otherwise received appropriate notice of the proceeding.
 
 
 21
 3. The court based the imposition of sanctions against Cohen on two factual findings: "(1) Mr. Kipperman and Mr. Cohen caused Mr. Hoffman to present false evidence to the Court in an effort to disassociate Mr. Kipperman and Gotham Apparel from responsibility for the order of the sweatshirts from Mackler and the delivery of the sweatshirts to Ron Pat Printing" and "(2) Mr. Kipperman gave false trial testimony that Mr. [David] Jacobs and his brother were the owners of Turtle Bay Apparel, that James Clare did not have a stock interest therein, and that Kipperman himself had no interest in Turtle Bay or Ron Pat Printing," testimony that "Mr. Cohen as trial attorney for Mr. Kipperman knew ... was false and did nothing to correct...." Mackler Prods., Inc., 1997 WL 269505 at * 13, * 14, (JA, 723-24, 726, 732).
 
 
 22
 The second of these findings appears to have been based on inconsistent and inadequately supported reasoning. The court never explained the basis for its conclusion that Kipperman had "an interest in ... Turtle Bay Apparel" and indeed noted elsewhere only that it was "likely" that Kipperman had such an interest. Id. at * 15 n. 25. In addition, the conclusion that "Mr. Cohen should have been knowledgeable about the ownership of both Turtle Bay Apparel and Ron Pat Printing since he represented those companies" in an earlier action does not sustain the finding that "Mr. Cohen as trial attorney for Mr. Kipperman knew [Kipperman's] testimony [on these matters] was false...." Id. at * 16 (emphasis added). Because the awards of sanctions rested on both factual findings, it is necessary to vacate the judgment imposing sanctions and remand for further consideration.
 
 CONCLUSION
 
 23
 The judgment is vacated and the case remanded for further proceedings.
 
 
 
 *
 The Honorable Milton Pollack, United States District Judge for the Southern District of New York, sitting by designation
 
 
 [1]
 The day before the case went to trial, counsel for the parties stipulated to a discontinuance with prejudice against defendant James J. Clare. (JA, 697)
 
 
 [2]
 We do not address a court's ability to levy a modest punitive sanction without the protection of criminal procedures
 
 
 [3]
 If the district court undertakes retrial of the punitive sanction, it should consider whether the appellant will have the right to jury trial. We express no view as to whether jury trial would be warranted