07-2491-cv (L)
Wolters Kluwer Financial Services, Inc. v. Scivantage

# UNITED STATES COURT OF APPEALS

## FOR THE SECOND CIRCUIT

August Term, 2008

(Argued: December 2, 2008    Decided: April 21, 2009)

Docket Nos. 07-2491-cv (L), 07-3410-cv (Con), 08-0031-cv (Con), 08-0036-cv (Con), 08-0029-cv (Con)

- - - - - - - - - - - - - - - - - - - - -x

Wolters Kluwer Financial Services, Inc.,

Plaintiff,

Marc S. Reiner, Kristan Peters, Dorsey & Whitney LLP,

Appellants,

- v.-

Scivantage, Adname Charchour, Sanjeev Doss, Cameron Routh, Gregory Alves,

Defendants.[*]

- - - - - - - - - - - - - - - - - - - - -x

Before:        JACOBS, Chief Judge, McLAUGHLIN, B.D. PARKER, Circuit Judges.

A law firm and two of its partners appeal from the

_____

[*] The Clerk of Court is directed to amend the official caption as indicated.

imposition of sanctions by the United States District Court for the Southern District of New York (Baer, J.).  We affirm the imposition of sanctions as to one partner (who is no longer with the firm), but reverse as to the firm and the other partner.

FRED WARDER, Esq., Patterson Belknap Webb & Tyler, LLP, New York, N.Y., for Appellant Marc S. Reiner.

FRANCIS CARLING, Esq., Collazo Carling & Mish, LLP, New York, N.Y., for Appellant Kristan Peters.

FRANK H. WOHL, Esq., Lankler Siffer & Wohl, LLP, New York, N.Y., for Appellant Dorsey & Whitney, LLP.

DENNIS JACOBS, Chief Judge:

This appeal is from non-monetary sanctions imposed by the United States District Court for the Southern District of New York (Baer, J.) upon the law firm of Dorsey & Whitney, LLP ("Dorsey"), and two of its partners: Kristan Peters (no longer with the firm) and Marc Reiner.  In the underlying litigation, Dorsey client Wolters Kluwer Financial Services, Inc. ("Wolters") sued four of its former employees in the Southern District of New York, alleging that they had taken certain proprietary information and

2

divulged it to their new employer, the technology company Scivantage. After considerable discovery conducted under orders of confidentiality, Dorsey voluntarily dismissed the suit and re-filed a substantially identical suit in the District of Massachusetts (Scivantage having contested personal jurisdiction in the Southern District of New York). Dorsey then filed a motion in the Massachusetts action seeking injunctive relief and attaching some of the discovery material produced by defendants in New York. Following a hearing into the voluntary dismissal and the use of the discovery material (as well as other issues) the New York district court issued a 130-page opinion imposing non-monetary sanctions on Dorsey, Peters, Reiner, and their client. Wolters has not appealed. We affirm the imposition of sanctions on Peters in light of the abundance of evidence of her misconduct; but we reverse the sanctions imposed on Dorsey and Reiner.

**I**

Although the sanctions are non-monetary, the district court respected the reputational impact of sanctions, and made detailed findings that allow disposition on appeal

3

without remand. See Wolters Kluwer Financial Services Inc. v. Scivantage et al., 525 F. Supp. 2d 448 (S.D.N.Y. 2007) (Opinion & Order). We adduce only those facts necessary to explain the disposition of this appeal.

Dorsey filed suit on behalf of Wolters in March, 2007, alleging federal and state violations, and seeking injunctive relief. The district court granted a temporary restraining order and ordered expedited discovery. The parties exchanged discovery documents, and the individual defendants were deposed.[1] While discovery was ongoing, the district court entered a Confidentiality Order providing in part that certain material--including all discovery material at issue here--"shall not be used [in] any other litigation proceeding," and that the district court's jurisdiction to enforce those restrictions would survive the lawsuit.

Defendants moved to dismiss on the ground (inter alia) that the district court lacked personal jurisdiction over the defendants, all of them located in Massachusetts. The

---

[1] During one of these depositions, defendant Sanjeev Doss admitted that he had Wolters files on his computer when the suit was filed, but that he had deleted them. This admission raised concerns of spoliation among the Dorsey attorneys, and appears to have raised the temperature of the litigation.

4

Dorsey attorneys then began to consider voluntary dismissal in New York and re-filing in the District of Massachusetts. Wolters gave Peters permission to dismiss the suit. During a subsequent conference call with the court and opposing counsel, however, Peters did not mention the pending dismissal. Either during or shortly after the conference call, Peters (the partner in charge) instructed Reiner (the junior partner on the case) to file the dismissal; Reiner sent notice of the dismissal by regular mail--though not electronically.

Despite the dismissal, Peters refused to return the discovery material produced by defendants, including three CDs (containing 153,000 pages of documents) that were produced after the dismissal had been quietly effected. Despite repeated orders by the district court to return all discovery material, including copies of deposition transcripts, the return of discovery material was not completed until two weeks after the suit was dismissed. In the meantime, Peters filed a motion for temporary injunctive relief in the District of Massachusetts, appending 115 pages of material produced in New York that were subject to the Confidentiality Order.

Defendants moved for sanctions, and the district court scheduled an evidentiary hearing. The parties subsequently settled, and the defendants withdrew the sanctions motion; but the court, having its own concerns regarding the lawyers' conduct, proceeded with the hearing. Ultimately, the court imposed a total of twenty-seven non-monetary sanctions on Dorsey, Peters, and Reiner, and their client. The firm and the individual lawyers appeal.

**II**

We review a district court's imposition of sanctions for abuse of discretion. Schlaifer Nance & Co. v. Estate of Warhol, 194 F.3d 323, 333 (2d Cir. 1999). The reviewing court must ensure that the district court's sanctions are not based on "an erroneous view of the law or on a clearly erroneous assessment of the evidence." Id. (internal quotation marks omitted). An assessment of the evidence is clearly erroneous where the reviewing court "is left with the definite and firm conviction that a mistake has been committed." Zervos v. Verizon New York, Inc., 252 F.3d 163, 168 (2d Cir. 2001) (internal quotation marks omitted). And the imposition of sanctions is also improper where "it

cannot be located within the range of permissible decisions." Id. at 169.

These familiar principles notwithstanding, we bear in mind that when the district court is "accuser, fact finder and sentencing judge" all in one, Schlaifer, 194 F.3d at 334 (internal quotation marks omitted), our review is "more exacting than under the ordinary abuse-of-discretion standard," Perez v. Danbury Hosp., 347 F.3d 419, 423 (2d Cir. 2003). Imposition of sanctions under a court's inherent powers requires a specific finding that an attorney acted in bad faith. Schlaifer, 194 F.3d at 338. Moreover, inherent-power sanctions are appropriate only if there is clear evidence that the conduct at issue is (1) entirely without color and (2) motivated by improper purposes. Id. at 336. Conduct is entirely without color when it lacks any legal or factual basis; it is colorable when it has some legal and factual support, considered in light of the reasonable beliefs of the attorney whose conduct is at issue. Id. at 337. A finding of bad faith, and a finding that conduct is without color or for an improper purpose, must be supported by a high degree of specificity in the factual findings. Id.; Eisemann v. Greene, 204 F.3d 393,

396 (2d Cir. 2000) (per curiam).

## III

The district court imposed two non-monetary sanctions on Dorsey & Whitney as a firm: one for voluntarily dismissing the Wolters Kluwer suit in the Southern District, and one for using the deposition transcripts in the Massachusetts action. Both sanctions must be overturned.

### A. Voluntary Dismissal

The district court found that Dorsey's main purpose in filing a Rule 41 voluntary dismissal of the Wolters litigation was to judge-shop in order to conceal from its client "deficiencies in counsel's advocacy" that had been noted by the district judge in New York. The district court reasoned that this sort of judge-shopping was an improper purpose and was accordingly sanctionable.

In seeking reversal of the sanction, Dorsey advances two arguments: (1) the district court's finding that Dorsey lawyers acted with an improper purpose was not accompanied by a finding that the firm itself acted in bad faith; and (2) the conduct itself is not sanctionable because the Rule

8

41 dismissal was not entirely without color.  We agree with Dorsey on both grounds.

With regard to bad faith, the only passage in the district court's opinion touching on culpability of the firm itself is in a footnote to its conclusion, in which the court wrote that the firm's culpability "stems not only from Ms. Peters, but also from the firm's inability . . . to adequately supervise its attorneys, as well as its decision to leave Ms. Peters in charge of the litigation while she was on vacation."  This passage reflects that the district court imputed Peters's bad faith to Dorsey because Dorsey failed to prevent what she did.  But we have held that "[b]ad faith is personal" and "may not automatically be visited" on others.  Browning Debenture Holders' Comm. v. DASA Corp., 560 F.2d 1078, 1089 (2d Cir. 1977).  Accordingly, absent other specific evidence of Dorsey's bad faith, a sanction under the court's inherent power is unjustified.  See Milltex Indus. Corp. v. Jacquard Lace Co., 55 F.3d 34, 38 (2d Cir. 1995) ("[T]he court's factual findings of bad faith must be characterized by a high degree of specificity.") (internal quotation marks omitted).

With regard to the Rule 41 dismissal, a plaintiff who

has not been served with an answer or motion for summary judgment has an "unfettered right voluntarily and unilaterally to dismiss an action." Thorp v. Scarne, 599 F.2d 1169, 1175 (2d Cir. 1979). Dismissal of a suit may be disruptive and annoying, but it is permitted by the rules:

> [P]laintiffs tend to dismiss actions that do not look promising while defendants generally want to obtain an adjudication on the merits in precisely the same cases. [But as] long as the plaintiff has brought himself within the requirements of Rule 41, his reasons for wanting to do so are not for us to judge.

Id. at 1177 n.10. It follows that Dorsey was entitled to file a valid Rule 41 notice of voluntary dismissal for any reason, and the fact that it did so to flee the jurisdiction or the judge does not make the filing sanctionable. Accordingly, because the district court made no finding that Dorsey acted in bad faith in voluntarily dismissing the case under Rule 41, and because Dorsey was entitled by law to dismiss the case, the district court's sanction against Dorsey for filing the voluntary dismissal must be reversed.

B. Use of Deposition Transcripts in Massachusetts

The district court sanctioned Dorsey (jointly and severally with Peters) "for the use of the [deposition]

10

transcripts in Massachusetts in contravention of this Court's Confidentiality Order." Dorsey argues that the district court made no sufficient finding that the firm itself acted in bad faith.

In support of the sanction, the district court found that the firm had assigned a senior partner to supervise Peters's management of the case, and that the supervising partner had signed off on the use of the deposition transcripts in Massachusetts. However, the record also shows that the supervising partner asked Peters for a copy of the Confidentiality Order; that Peters did not give him a copy until after the Massachusetts motion had been filed; and that he signed off on the use of the deposition transcripts on the basis of Peters's representation that such use was not barred by the Order. In short, while the supervising Dorsey partner might have insisted on seeing a copy of the Order before the Massachusetts motion was filed, nothing in the record suggests that the decision to permit the Massachusetts filing was made by the firm in bad faith or for any improper purpose. The imposition of sanctions against Dorsey for the use of the deposition transcripts must therefore be reversed.

**IV**

The district court imposed two non-monetary sanctions on Reiner, one for cancelling a deposition on the date the suit was voluntarily dismissed, and one for sending notice of the dismissal by mail but not electronically. These sanctions must also be reversed.

A. Cancellation of Deposition

The district court had directed the parties to schedule the depositions of key witnesses. Dorsey (on behalf of Wolters) asked to depose Bill Wagner, whose deposition was scheduled for Friday, April 13--the day of the dismissal. On April 12, Reiner e-mailed defendants' counsel to confirm the deposition. Later that day, Peters told Reiner that she wanted to depose another witness instead. She then e-mailed opposing counsel and asked to substitute the witness; opposing counsel responded that Wagner would appear as scheduled.

The next morning, in view of the imminent dismissal of the New York suit, Reiner asked Peters if he could notify an adversary lawyer that the Wagner deposition would not be going ahead. Peters told Reiner to wait because she didn't

"want to tip him off." She later authorized Reiner to cancel the Wagner deposition, and he then advised opposing counsel by e-mail that Dorsey was unable to go forward with the Wagner deposition as scheduled because he hadn't heard from them regarding the substitution of witnesses--which was not so. The district court sanctioned Reiner for his conduct in cancelling the Wagner deposition, finding that his last e-mail "was simply a bad faith subterfuge" to hide the true reason for the cancellation--namely the impending voluntary dismissal.

Reiner makes two arguments: (1) he cancelled the deposition not because of the impending dismissal but because Peters had told him that she wanted to depose another witness instead; and (2) even if his purpose was concealment, his conduct was colorable because he had no legal obligation to disclose the tactical purpose of the cancellation.

This sanction must be reversed. It is true that Reiner made a misrepresentation when he claimed that the reason for the cancellation was the failure of opposing counsel to answer Dorsey's request to substitute witnesses. But not every pretextual or tactical misdirection is a sufficient

13

ground for sanctions. It was in everyone's interest that the deposition be cancelled, for a reason that Reiner lacked authority (from Peters) to disclose. The district court's findings clearly show that the cancellation of the deposition was done for the purpose of concealment, but that was the intent of Peters, not Reiner. In the absence of other specific evidence of Reiner's intentional misconduct, the sanction must be reversed. See Schlaifer, 194 F.3d at 338.

B. Filing of the Voluntary Dismissal

The district court also reprimanded Reiner "for his decision to file the voluntary dismissal without immediately notifying the other side, as evidenced by his crossing out of the portion of the certificate of service that provided for service by e-mail." The court made the requisite finding that Reiner's conduct was "made in bad faith and for the improper purpose of misleading this Court and Defendants." Reiner challenges the sanction on the ground that his service was procedurally adequate.

The Federal Rules of Civil Procedure specifically contemplate service of pleadings by mail, and provide that

"service is complete upon mailing." Fed. R. Civ. P. 5(b)(2)(C). The Federal Rules and the Local Rules of the Southern District of New York allow for electronic service also. See Fed. R. Civ. P. 5(b)(2)(E) ("A paper is served under this rule by . . . sending it by electronic means . . . ."); Southern and Eastern Districts of New York Local Rule 5.2 ("A paper served and filed by electronic means in accordance with procedures promulgated by the Court is, for purposes of Federal Rule of Civil Procedure 5, served and filed in compliance with the local civil rules of the Southern and Eastern Districts of New York."). But the rules do not make electronic service a requirement. It follows that Reiner's conduct was not entirely without color, and the district court's sanction must therefore be reversed. Schlaifer, 194 F.3d at 336.

**V**

The district court imposed twenty-four individual non-monetary sanctions against Peters, identifying a variety of conduct that it found to have been undertaken in bad faith, without color of law, and for an improper purpose. We need only review a sampling of Peters's conduct to affirm the

15

district court's imposition of sanctions.

## A. Procedural Protections

At the outset, Peters argues that the district court erred in imposing sanctions in the form of reprimands without affording her the procedural protections available to a criminal defendant.  Depending on circumstances, a party facing sanctions may be entitled to enhanced procedural protections beyond notice and an opportunity to be heard.  Mackler Productions, Inc. v. Cohen, 146 F.3d 126, 128 (2d Cir. 1998).  Among those circumstances are (1) whether the sanction is intended to be compensatory or punitive; (2) whether the sanction is payable to another party or to the court; (3) whether the sanction was retrospective or whether it sought to coerce future compliance; (4) whether the sanctioned party had an opportunity to purge; and (5) whether the size of the required payment was substantial.  Id. at 129.

Mackler was based on International Union, United Mine Workers of America v. Bagwell, 512 U.S. 821 (1994), which considered the difference between criminal and civil contempt that is committed outside the judge's presence.

See id. at 826-27 & 827 n.2.  The Court explained: "Unlike most areas of law, where a legislature defines both the sanctionable conduct and the penalty to be imposed, civil contempt proceedings leave the offended judge solely responsible for identifying, prosecuting, adjudicating, and sanctioning the contumacious conduct."  Id. at 831.  This concentration of power risks arbitrariness and unfairness.  See id.  While civil contempt fines are "nonpunitive and avoidable" and therefore do not require criminal process, the threat of criminal contempt fines require criminal-procedure protections.  See id. at 830-32.  We have extended the reasoning of Bagwell from criminal contempt to punitive sanctions against an attorney imposed under statutory or inherent authority.  See Mackler, 146 F.3d at 128.  But we decline to extend Bagwell even further to reach reprimands against an attorney.

It has long been recognized that separation of powers concerns are abated in the contempt or sanctions context.  See Bagwell, 512 U.S. at 840 (Scalia, J., concurring); see also Honda Motor Co. v. Oberg, 512 U.S. 415, 430 (1994) ("As [the Supreme] Court has stated from its first due process cases, traditional practice provides a touchstone for

17

constitutional analysis."); Sun Oil Co. v. Wortman, 486 U.S. 717, 730 (1988) ("'If a thing has been practiced for two hundred years by common consent, it will need a strong case for the [Due Process Clause] to affect it.'" (quoting Jackson v. Rosenbaum Co., 260 U.S. 22, 31 (1922))). Historical practice demonstrates that nonmonetary attorney discipline (unlike punitive fines) does not require the full panoply of criminal procedures.

Punitive fines and imprisonment are the common tools of the criminal law. See Bagwell, 512 U.S. at 827-29. Tools of attorney discipline, such as reprimands, are not traditional criminal punishments, as they serve not merely to punish and deter like the criminal law, but to ensure ethical conduct before the courts. In Ex parte Wall, 107 U.S. 265 (1883), the Supreme Court held that "the constitutional privilege of trial by jury for crimes does not apply to prevent the courts from punishing its officers for contempt, or from removing them in proper cases," because sanctions such as reprimands "are not for the purpose of punishment, but for the purpose of preserving the courts of justice from the official ministrations of persons unfit to practice in them." Id. at 288. Accordingly, the

18

Court held that to strike an attorney from the rolls, notice and a hearing suffice for due-process purposes, as it "is a regular and lawful method of proceeding, practiced from time immemorial." Id. at 288-89. Blackstone confirms that at common law, attorneys could be held in contempt without a jury trial. See William Blackstone, 4 Commentaries *277, *280-81 (noting that the summary proceeding of attachment without a jury trial was "immemorially used" to punish contempt committed by attorneys and solicitors, which, "if frequent or unpunished, creates among the people a distrust of the courts themselves"); see also David Eady & A.T.H. Smith, Arlidge, Eady & Smith on Contempt 8 (3d ed. 2005) (noting that at common law, "[o]fficers of the court seem to have been regarded as being in a special position, such that they could be dealt with summarily even for offenses out of court").

While Mackler suggests that a court's supervisory authority over attorneys does not permit punitive fines without criminal process, the common law and long use and practice support the court's authority to impose on an attorney nonmonetary sanctions such as public reprimands without a full criminal proceeding. Peters has not

19

identified a single court that has required that criminal procedures be employed before imposition of reprimands against an attorney. Based on this clear historical and contemporary practice, which recognizes the difference between punitive fines and reprimands, we hold that attorneys need not be given the full rights required in a criminal trial before the court may impose such nonmonetary disciplinary sanctions for litigation misconduct.

B. Disclosure of "Attorney's Eyes Only" Material

Joseph Honor, a Wolters employee, testified that Peters disclosed to him answers given by an opposing party in the course of a deposition that had been designated "Attorney's Eyes Only." The district court, crediting Honor's testimony, found that Peters knowingly, intentionally, and in bad faith disclosed confidential material to her client. The record clearly reflects that Peters' disclosure of this material was without color of law, and for an improper purpose in violation of the court's order. We see no reason to disturb this sanction on appeal.

## C. Failure to Attend a Deposition

The district court ordered that the deposition of defendants' witness Michael Wiatrak be conducted on Thursday, April 12 at 9 a.m.  The night before, Peters e-mailed defense counsel confirming the deposition, but neither she nor any other Dorsey lawyer showed up.  The district court sanctioned Peters under Federal Rule of Civil Procedure 37(d), which grants a district court "broad power" to impose sanctions on a party who disobeys a discovery order.  See Friends of Animals, Inc. v. U.S. Surgical Corp., 131 F.3d 332, 334 (2d Cir. 1997) (per curiam).

We review a district court's imposition of Rule 37 sanctions for abuse of discretion.  John B. Hull, Inc. v. Waterbury Petroleum Prods., Inc., 845 F.2d 1172, 1176 (2d Cir. 1988).  There is no abuse of discretion here: Peters's failure to appear at the deposition directly contravened the court's discovery order.  The sanction is affirmed.

## D. Ordering of Duplicate Transcripts

On April 19, the district court ordered Dorsey to return to its adversaries all copies of their deposition transcripts in Dorsey's possession.  Two days later, while

Reiner and the other Dorsey attorneys were working to comply with the court's order, Peters privately contacted the court reporting company and ordered another copy of several of the deposition transcripts that were being returned. Peters told the company that Dorsey had misplaced its originals. The district court sanctioned Peters for ordering these additional copies, finding that Peters acted in bad faith. Peters's conduct was entirely without color of law, and was clearly taken for the improper purpose of circumventing the district court's order. We affirm the district court's sanction.

Having reviewed these three instances, we see no need to consider the other sanctions for which the district court issued reprimands. No likely argument has been advanced as to why the other nineteen sanctions are defective, and because the sanctions are all non-monetary, the subtraction of one or another from the whole course of conduct would not alter the nature or tenor of the district court's rulings.

For these reasons, we reverse the sanctions imposed on Dorsey and on Reiner, but affirm the sanctions imposed on Peters.