NOTE:  This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**JOHN EASTCOTT,**
*Plaintiff-Appellant,*

**v.**

**HASSELBLAD USA, INC., HASSELBLAD A/S,** AND **B&H PHOTO & ELECTRONICS CORP.,**
*Defendants-Appellees.*

---

2013-1050, -1051

---

Appeals from the United States District Court for the Southern District of New York in No. 11-CV-5383, Judge Jed S. Rakoff.

---

Decided:  June 4, 2014

---

DOUGLAS W. WYATT, Wyatt, Gerber & O'Rourke LLP, of New York, New York, argued for plaintiff-appellant.

MARK C. JOHNSON, Renner, Otto, Boisselle & Sklar, LLP, of Cleveland, Ohio, argued for defendants-appellees. With him on the brief were KYLE B. FLEMING and NICHOLAS J. GINGO.

---

Before O'MALLEY, WALLACH, and TARANTO, *Circuit Judges.*

O'MALLEY, *Circuit Judge.*

This patent appeal involves camera lens technology and the district court's imposition of sanctions for a "sham" invoice requesting expert fees. In 2011, Appellant John Eastcott filed a complaint in the United States District Court for the Southern District of New York against Appellees Hasselblad A/S, Hasselblad USA Inc., and B&H Photo & Electronics Corp. alleging infringement of U.S. Patent No. 5,592,331 ("the '331 patent"). Specifically, Eastcott asserted that the Hasselblad HTS 1.5 adapter infringed claims 1, 6, and 26 of the '331 patent. Appellees counterclaimed for declaratory judgment of non-infringement and invalidity.

During discovery, Appellees moved for sanctions, alleging that Eastcott and his counsel fabricated an invoice for expert witness fees. After a hearing, the district court imposed sanctions against Eastcott and his counsel under its inherent power in the amount of double the attorneys' fees and costs for bringing the motion, with half payable to Appellees and the other half payable to the district court. In a subsequent decision, the district court granted summary judgment of non-infringement of claim 26 and invalidity of claims 1 and 6.

Eastcott appeals only the district court's grant of summary judgment finding that claim 26 is not infringed under the doctrine of equivalents, and the order imposing sanctions. *See* Appellant Br. 34. For the reasons explained below, we affirm the district court's grant of summary judgment of non-infringement of claim 26 of the '331 patent, vacate the district court's imposition of sanctions, and remand for further proceedings.

BACKGROUND

A. The Asserted Patent

Eastcott is a professional photographer and the named inventor of the '331 patent, which issued on January 7, 1997. '331 Patent, at [45], [76] (filed Jan. 18, 1995). The patent is titled "Optical Adapter for Controlling the Angle of the Plane of Focus." *Id.* at [54]. The '331 patent describes a camera adapter that "permits the user to control the angle of the plane of focus relative to the image plane." *Id.* col. 4 ll. 26–28. This control allows tilting a lens to bring into focus simultaneously objects positioned at different distances. *Id.* col. 3 ll. 51–58. It also allows a user to render objects positioned at the same distance from the lens plane with differing degrees of sharpness. *Id.* For example, "a portrait of a person facing the camera may be recorded with one side of the face sharp and the other mysteriously soft and out of focus." *Id.* Only dependent claim 26 is relevant to this appeal, which incorporates independent claim 1. These claims cover a camera adapter that allows the lens to tilt in the manner noted above.

Claim 1 recites:

An adapter for altering the angle of the plane of focus of an optical system, the optical system including (a) an optical instrument having an opening through which an image forming beam can pass, an image plane adapted to receive an image thereon and an optical axis, and (b) an interchangeable lens having an optical axis;

the adapter being sandwiched between, and removably connected to, the optical instrument and the interchangeable lens;

the adapter having

(i) an adapter body;

(ii) a secondary lens mounted within the adapter body,

(iii) a front face coupling means on the adapter body to removably mount the interchangeable lens thereto,

(iv) a back face coupling means on the adapter body to removably mount the adapter to the optical instrument, and

(v) tilt means to tilt the optical axis of the interchangeable lens at a variable, including non-perpendicular, angle to the image plane of the optical instrument.

*Id.* col. 8 l. 66–col. 9 l. 18.

Claim 26 recites:

An adapter as in claim 1 wherein the tilt means includes a mounting ring holding the secondary lens two pins protruding outwardly from the mounting ring and a casing member having two slots therein at acute angles to the optical axis of the optical instrument and wherein each pin slides within one of the slots.

*Id.* col. 10 ll. 54–59.

## B. Procedural History

Eastcott filed suit against the Appellees on August 2, 2011, alleging that the Hasselblad 1.5 adapter infringed claims 1, 6, and 26 of the '331 patent. *See* Complaint, *Eastcott v. Hasselblad USA Inc.*, No. 1:11-cv-05383-JSR (S.D.N.Y. Aug. 2, 2011), ECF No. 1. Appellees counterclaimed for declaratory judgment of non-infringement and invalidity. *See* Answer, *Eastcott v. Hasselblad USA Inc.*, No. 1:11-cv-05383-JSR (S.D.N.Y. Oct. 11, 2011), ECF No. 12.

During discovery, Eastcott identified both himself and his wife, Yva Momatiuk, as persons with knowledge of the infringement. Appellees deposed both Eastcott and Momatiuk. In January 2012, Eastcott deposed the Appellees' two identified expert witnesses: Andrew Finger and Anders Poulsen. After their depositions, Appellees requested that Eastcott reimburse them under Federal Rule of Civil Procedure 26(b)(4)(E) in the amount of $13,552.50 for the time their expert witnesses spent preparing and attending those depositions. When threatened with a motion seeking payment of the invoice, Eastcott sent Appellees an invoice for $17,000.00 for expert fees relating to his and Momatiuk's depositions. During a May 15, 2012 telephone conference with the court, Eastcott's counsel stated that he had "provided an invoice that would address [Appellees'] invoices," because his invoice was "commensurate" with the Appellees' invoices. Joint Appendix ("J.A.") 39.

On May 11, 2012, Appellees filed a motion seeking an order that Eastcott must pay (1) $18,770.53 for Appellees' expert fees from the two depositions, now including travel time; (2) attorneys' fees and costs for filing the motion, and (3) sanctions for "fabricating the charges on the [Eastcott/Momatiuk] invoice." *See* Memorandum and Order at 2, *Eastcott v. Hasselblad USA Inc.*, No. 1:11-cv-05383-JSR (S.D.N.Y. Sept. 26, 2012), ECF No. 36 (internal quotation marks omitted). On September 25, 2012, the district court granted Appellees' motion, and imposed sanctions upon Eastcott and his counsel, jointly and severally, in the amount of $12,815.70, for creating, submitting, and continuing to rely on the "sham invoice." *Id.* The district court reached this number by doubling the attorneys' fees and costs of $6,407.85 the Appellees incurred in bringing the motion. The court ordered half of the sanction payable to Appellees and half payable to the court. The court expressly grounded the sanctions upon its inherent authority.

On January 17, 2012, Appellees moved for summary judgment, arguing that claims 1, 6, and 26 of the '331 patent were invalid and that claim 26 was not infringed. Eastcott submitted two separate affidavits, both self-authored, in support of his opposition to the motion for summary judgment. On September 24, 2012, the district court granted the Appellees' motion for summary judgment, finding claims 1 and 6 invalid and claim 26 not infringed, but not invalid. *See* Memorandum Order, *Eastcott v. Hasselblad A/S*, No. 1:11-cv-05383-JSR (S.D.N.Y Sept. 25, 2012), ECF No. 34. Because Eastcott conceded that the HTS 1.5 adapter did not literally infringe claim 26, the district court only addressed infringement under the doctrine of equivalents. *See id.* at 21. The district court found that Eastcott failed to provide the required particularized testimony—either in his affidavits or through his deposition testimony—to establish infringement on a limitation-by-limitation basis under the doctrine of equivalents, making judgment as a matter of law on that issue appropriate. *See id.* On September 26, 2012, the district court entered judgment granting the Appellees' motion for summary judgment and dismissing the complaint with prejudice. Clerk's Judgment, *Eastcott v. Hasselblad A/S*, No. 1:11-cv-05383-JSR (S.D.N.Y Sept. 26, 2012), ECF No. 35.

Eastcott appeals from: (1) the final judgment of the district court granting summary judgment of non-infringement of claim 26 of the '331 patent, and (2) the September 25, 2012 order imposing sanctions on Eastcott and his counsel. This court has jurisdiction under 28 U.S.C. § 1295(a)(1).

## DISCUSSION

This court reviews the grant of summary judgment of non-infringement de novo. *Chimie v. PPG Indus., Inc.*, 402 F.3d 1371, 1376 (Fed. Cir. 2005). For issues not unique to patent law, this court generally applies the law

of the applicable regional circuit. *i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 841 (Fed. Cir. 2010). Here, the applicable regional circuit is the Second Circuit, which reviews a district court's exercise of its inherent power to sanction for an abuse of discretion. *See Reilly v. Natwest Markets Grp. Inc.*, 181 F3d 253, 270 (2d Cir. 1999); *Miltex Indus. Corp. v. Jacquard Lace Co.*, 55 F.2d 34, 37 (2d Cir. 1995).

## A. Summary Judgment

According to the Federal Rules of Civil Procedure, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In considering summary judgment, we view the evidence in the light most favorable to the non-moving party. *See Poller v. Columbia Broad. Sys., Inc.,* 368 U.S. 464, 473 (1962). Accordingly, if the "evidence favoring the nonmoving party . . . is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986) (citations omitted).

Under the doctrine of equivalents, "a product or process that does not literally infringe upon the express terms of a patent claim may nonetheless be found to infringe if there is 'equivalence' between the elements of the accused product or process and the claimed elements of the patented invention." *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 21 (1997).

> [A] patentee must . . . provide particularized testimony and linking argument as to the "insubstantiality of the differences" between the claimed invention and the accused device or process, or with respect to the function, way, result test when such evidence is presented to support a finding of infringement under the doctrine of equivalents.

> Such evidence must be presented on a limitation-by-limitation basis. Generalized testimony as to the overall similarity between the claims and the accused infringer's product or process will not suffice.

*AquaTex Indus., Inc. v. Techniche Solutions*, 479 F.3d 1320, 1328 (Fed. Cir. 2007) (emphasis omitted) (quoting *Texas Instruments, Inc. v. Cypress Semiconductor Corp.*, 90 F.3d 1558, 1567 (Fed. Cir. 1996)); *see also Ethicon Endo-Surgery, Inc. v. U.S. Surgical Corp.*, 149 F.3d 1309, 1315 (Fed. Cir. 1998) ("Whether a component in the accused subject matter performs substantially the same function as the claimed limitation in substantially the same way to achieve substantially the same result may be relevant to this determination." (citations omitted)). "'The same rule applies in the summary judgment context.'" *AquaTex Indus.*, 479 F.3d at 1328 (quoting *Network Commerce, Inc. v. Microsoft Corp.*, 422 F.3d 1353, 1363 (Fed. Cir. 2005)). "[W]hile many different forms of evidence may be pertinent, when the patent holder relies on the doctrine of equivalents, as opposed to literal infringement, the difficulties and complexities of the doctrine require that evidence be presented to the jury or other fact-finder through the particularized testimony of a person of ordinary skill in the art, typically a qualified expert, who (on a limitation-by-limitation basis) describes the claim limitations and establishes that those skilled in the art would recognize the equivalents." *Id.* at 1329.

The district court found that Eastcott did not provide the required particularized testimony on a limitation-by-limitation basis to establish the existence of a genuine issue of fact regarding infringement under the doctrine of equivalents. Eastcott presented evidence through his own deposition testimony and his two affidavits in opposition to the Appellees' motion for summary judgment of non-infringement. Based on our review of the record, we agree

with the district court that Eastcott's evidence is insufficient to defeat summary judgment.[1]

First, turning to Eastcott's deposition testimony, we find that it fails to address any limitations in claim 26. Eastcott testified that he was not in the position to apply the legal claims to the HTS 1.5 adapter, stating that he "hired legal expertise specifically because that is not my area of expertise." Johnson Decl. Ex. 11 at 18–19, *Eastcott v. Hasselblad A/S*, No. 1:11-cv-05383-JSR (S.D.N.Y Jan. 19, 2012), ECF No. 24-11 (Eastcott Dec. 20, 2011 Deposition). He did not identify, moreover, what features of the adapter corresponded to each limitation of the claims. *See id.* at 20–23. Indeed, he had no opinion about where the mounting ring was located in the HTS 1.5 adapter. *See id.* at 22–23. When Appellees' counsel asked Eastcott whether he had "ever formed any opinions with regard to what element on a Hasselblad HTS device corresponds to a mounting ring?"; Eastcott responded that he had not. *See id.* Without an opinion on which element of the accused HTS 1.5 adapter meets the mounting ring limitation, Eastcott's deposition testimony fails to provide the requisite particularized testimony.

We also find Eastcott's affidavits insufficient. Eastcott argues that paragraphs 69 to 75 of his first affidavit and 36 to 44 of his second affidavit provide "particularized testimony that the [Hasselblad] adapter structure performs substantially the same way and gives the same results as the adapter of the '331 patent-in-suit." Appellant Br. 35, 50–53. This is not the standard, howev-

---

[1] Because we find that, taken in its entirety, Eastcott's testimony lacks the required particularized testimony on a limitation-by-limitation basis, we decline to address the admissibility of Eastcott's affidavits.

er. Equivalence must be established on a *limitation-by-limitation basis*, not based on an assessment of the accused product as a whole. *See Aquatex*, 479 F.3d at 1328.

Having carefully examined the paragraphs to which Eastcott points, we find Eastcott's affidavit testimony conclusory; it simply does not provide a sufficient explanation of which specific structures of the HTS 1.5 adapter are equivalent to the limitations in claim 26. Eastcott lists paragraphs that primarily recite the limitations in claim 26 and then broadly state that the HTS 1.5 adapter contains these limitations. For example, paragraphs 69 to 75 of the first affidavit allege that the HTS 1.5 adapter contains a mounting ring, casing member, pins, and slots. Similarly, paragraphs 36 to 43 of Eastcott's second affidavit state that the HTS 1.5 adapter includes a mounting ring, casing member, pins, and slots. These paragraphs do not point to any specific portions of the HTS 1.5 adapter that satisfy these limitations in the specific manner described in the claim, however. Paragraph 44 of the second affidavit, moreover, is no more than a legal conclusion that "[t]he HTS 1.5 adapter provides slots and pins that perform in the substantially the same way, using substantially the same means with substantially the same result as the slots and pins described in the '331 patent." *See* Wyatt Decl. Ex. 23 at 14, *Eastcott v. Hasselblad USA Inc.*, No. 1:11-cv-05383-JSR (S.D.N.Y. Jan. 28, 2012), ECF No. 27-23. This conclusory statement is simply not enough to create a factual question regarding infringement under the doctrine of equivalents.

Eastcott's affidavits are not only conclusory; they are inconsistent. For example, while paragraph 69 of Eastcott's first affidavit and paragraph 36 of Eastcott's second affidavit state that the HTS 1.5 adapter includes pins in the casing member and slots on the mounting ring, paragraph 40 of his second affidavit states that the HTS 1.5 adapter includes a casing member with two slots, not pins.

Ultimately, we agree with the district court's finding that Eastcott's submissions failed to contain sufficient particularized testimony and linking argument on a limitation-by-limitation basis to support a finding of infringement of claim 26 under the doctrine of equivalents. Accordingly, Eastcott's proffered evidence fails to demonstrate a genuine dispute as to any material fact that would prevent the grant of summary judgment.

## B. Sanctions

Turning to the district court's sanctions, Eastcott and his counsel assert that they did not receive notice of the authority underlying the contemplated sanctions or the applicable standard according to which they might be imposed. We agree. Under Second Circuit law, "'due process requires that courts provide notice and opportunity to be heard before imposing *any* kind of sanctions.'" *Ted Lapidus, S.A. v. Vann*, 112 F.3d 91 (2d Cir. 1997) (quoting *In re Ames Dept. Stores, Inc.*, 76 F.3d 66, 70 (2d Cir. 1996) (emphasis in original)). "An attorney whom the court proposes to sanction must receive specific notice of the conduct alleged to be sanctionable and the standard by which that conduct will be assessed, and an opportunity to be heard on that matter, and must be forewarned of the authority under which sanctions are being considered, and given a chance to defend himself against specific charges."[2]  *Sakon v. Andreo*, 119 F.3d 109, 114 (2d Cir.

---

[2]    While Appellees assert that a district court can properly impose sanctions under its inherent power without specific notice of the grounds for sanctions, they cite no Second Circuit authority to support this position, relying instead on non-binding Third Circuit precedent. Although the Third Circuit's approach has much to commend it, we see no case law in the Second Circuit to date to indicate that the Second Circuit would adopt a similar exception to its otherwise strict notice requirements.

1997) (internal quotation marks and citations omitted); *see Schlaifer Nance & Co. v. Estate of Warhol*, 194 F.3d 323, 334 (2d Cir. 1999) ("At a minimum, the notice requirement mandates that the subject of a sanctions motion be informed of: (1) the source of authority for the sanctions being considered; and (2) the specific conduct or omission for which the sanctions are being considered so that the subject of the sanctions motion can prepare a defense."); *Lapidus*, 112 F.3d at 97 ("We believe that a sanctioned attorney must receive specific notice of the conduct alleged to be sanctionable and the standard by which that conduct will be assessed, and an opportunity to be heard on that matter.").

Before the district court imposed sanctions, Eastcott and his counsel were unaware that the court might sanction them under its inherent powers. Appellees' initial letter-motion requested simply that the district court "sanction [Eastcott] and its counsel for fabricating the charges on the 'invoice.'" J.A. 1190. This letter-motion did not cite any specific authority. Eastcott and his counsel responded by arguing that the letter-motion seeks "unspecified sanctions" and that "Rule 11 does not provide for sanctions for discovery disputes such as this and in no way has [Eastcott] abused discovery or made unreasonable demands on [Appellees'] experts." J.A. 1205–07. In their reply, Appellees explicitly stated that they believed that "[s]anctions are awardable under Rule 37." J.A. 1268. This mention of Rule 37 was the only specific authority cited by the Appellees.

Nor did the district court warn Eastcott and his counsel of potential sanctions under the court's inherent powers at the motions hearing. After listening to arguments from both parties, the district court stated that it would "take this matter under advisement." J.A. 1330. The district court then turned its attention on Eastcott's counsel to consider "whether the conduct of counsel in what the Court may determine is a patently fraudulent

invoice prepared with fraudulent intent warrants referral to the grievance committee of the Southern District of New York of counsel for their facilitation and participation in what may or may not be . . . a gross fraud." J.A. 1330–31. The district court then provided each party ample opportunity to raise any additional support for their positions. Throughout the entire hearing, the district court did not mention the possibility of sanctions under its inherent powers. *See* J.A. 1325–38. Nor did Appellees request sanctions under the district court's inherent powers at the hearing. Not until the district court imposed the sanctions in its Memorandum Order was there any indication of the court's inherent powers as a basis for sanctions.

Under Second Circuit standards, the notice the district court and Appellees' counsel provided Eastcott and his counsel was insufficient to satisfy due process. As noted above, "[a]t a minimum, the notice requirement mandates that the subject of a sanctions motion be informed of: (1) the source of authority for the sanctions being considered; and (2) the specific conduct or omission for which the sanctions are being considered so that the subject of the sanctions motion can prepare a defense." *Schlaifer*, 194 F.3d at 334. Consistent with these requirements, in *L.B. Foster Co. v. America Piles, Inc.*, the Second Circuit found that the district court failed to provide procedural safeguards to a sanctioned party when it imposed sanctions under 28 U.S.C. § 1927, though the party only received notice that sanctions were sought under Rule 11. 138 F.3d 81, 89 (2d Cir. 1998); *cf. Schlaifer*, 194 F.3d at 334 (finding sufficient notice when the sanctions motion invoked and set forth the standards for sanctions under the court's inherent power and § 1927, even though the motion focused on Rule 11). Although Eastcott surely had an opportunity to be heard and argue that sanctions were not warranted, we find that Eastcott and his counsel did not receive notice of the standard and

authority under which sanctions were being considered before the district court imposed sanctions. Because the Second Circuit requires greater notice before it will find that a sanctioned party received all process due to him or her prior to the imposition of sanctions, we vacate the district court's order imposing sanctions and remand for further proceedings.

On remand, the district court must also reconsider any sanctions which are punitive rather than merely compensatory in nature. When imposing punitive sanctions, such as the portion of the sanction here made payable to the court, additional procedures are required. "A troublesome aspect of a trial court's power to impose sanctions . . . is that the trial court may act as accuser, fact finder and sentencing judge, not subject to restrictions of any procedural code and at times not limited by any rule of law governing the severity of sanctions that may be imposed." *Mackler Prods., Inc. v. Cohen*, 146 F.3d 126, 128–29 (2d Cir. 1998) (*Mackler I*) (citation omitted) (finding that a $10,000.00 sanction, payable to the court, imposed under its inherent authority was a punitive sanction, and consequently, required the protections of criminal procedure). Given this concern, "in certain sanctions proceedings, the person facing imposition of sanctions should have the benefit of the procedural protections available to a person charged with a crime." *Id.* at 128. "Criminal protections are generally thought to include, in addition to notice and the opportunity to be heard, the right to a public trial, assistance of counsel, presumption of innocence, the privilege against self-incrimination, and the requirement of proof beyond a reasonable doubt." *Id.* (citations omitted).

In *Mackler I*, the Second Circuit found that a $10,000.00 sanction payable to the district court imposed under its inherent authority was a punitive sanction, and consequently, required the protections available to criminal defendants. *Id.* at 129. In reaching this conclusion,

the court considered the following factors: (1) whether the sanction was intended to be compensatory or punitive; (2) whether the imposition was retrospective, rather than to coerce future compliance; (3) whether the sanction was payable to the court, rather than the injured party; and (4) whether the size of the sanction was substantial. *Id.* In finding that the sanction imposed there required greater procedural protections, the court explained that it had all of the features of a criminal sanction outlined above. *Id.* Similarly, here, we conclude that at least a portion of the sanction imposed was punitive, retrospective with no opportunity to purge, payable to the court, and substantial.[3] It is undisputed that Eastcott and his counsel did not receive the benefit of all of the procedural safeguards which are prerequisites to imposition of a criminal penalty. Because we find that the imposition of the sanction payable to the court in the amount of $6,407.85 on Eastcott and his counsel, jointly and several-

---

[3] In a subsequent appeal, the Second Circuit held that the district court's reduction of its sanction from $10,000.00 to $2,000.00 did not alter the criminal character of the sanction where all of the factors indicative of a criminal sanction remained. *Mackler Productions, Inc. v. Cohen*, 225 F.3d 136, 142–43 (2d Cir. 2000) (*Mackler II*). In *Mackler II*, the court emphasized that the *gravamen* of its analysis focused on "whether or not the sanction at issue was criminal or civil *in character*." *Mackler II*, 225 F.3d at 142 (emphasis in original); *see also Buffington v. Baltimore Cnty., Md.*, 913 F.2d 113, 132–35 (4th Cir. 1990) (finding $6,785.37 punitive sanction to require criminal procedural protections). Noting that only the amount of the sanction had changed, the court found that all of the other factors still supported the conclusion that the sanction at issue was criminal in nature, despite the reduction in the size of the sanction. *Mackler II*, 225 F.3d at 142.

ly, required that the district court afford them criminal procedural protections, we also vacate and remand the district court's order imposing the portion of the "punitive" sanction payable to the court on this basis.

CONCLUSION

For the reasons above, and because we find that Eastcott's other arguments have no merit, we affirm the grant of summary judgment of non-infringement of claim 26, vacate the district court's imposition of sanctions, and remand so that the district court may consider reimposing sanctions after providing Eastcott and his counsel the proper notice required for due process, and the benefit of criminal processes for any punitive sanctions.

**AFFIRMED-IN-PART, VACATED-IN-PART, AND REMANDED**