10-2811-cv
Enmon v. Prospect Capital

**UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT**

August Term, 2011

(Argued:  November 9, 2011    Final Submission:  December 2, 2011    Decided: April 6, 2012)

Docket No. 10-2811-cv

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

MICHAEL ENMON,

Respondent-Appellant,

ARNOLD & ITKIN LLP,

Miscellaneous-Appellant,

v.

PROSPECT CAPITAL CORPORATION, PROSPECT
CAPITAL MANAGEMENT LLC, JOHN F. BARRY,
M. GRIER ELIASEK, WALTER PARKER, and BART
DE BIE,

Petitioners-Appellees.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

Before: POOLER, B.D. PARKER and LOHIER, Circuit Judges.

On appeal, law firm Arnold & Itkin LLP challenges the District Court's imposition of sanctions, as well as the form and monetary amount of sanctions.  We largely affirm the judgment of the District Court because we find that it did not abuse its discretion in imposing sanctions or determining the monetary amount of the sanctions.  However, we remand the order insofar as it required all Arnold & Itkin attorneys to attach the sanctions order to all future pro hac vice applications in the Southern District of New York, so that the District Court may consider whether a temporal limit should apply to that part of the order and whether to exclude from the order any attorneys who joined the firm after June 23, 2010.

ALEXANDRA A.E. SHAPIRO, Elizabeth C. Kennedy, James Darrow (on the brief), Macht, Shapiro, Arato & Isserles LLP, New York, NY, for Miscellaneous-Appellant.

MAURA BARRY GRINALDS, Jonathan J. Lerner, Timothy G. Nelson, Daniel M. Sussner (on the brief), Skadden, Arps, Slate, Meagher & Flom LLP, New York, NY, for Petitioners-Appellees.

LOHIER, Circuit Judge:

Arnold & Itkin LLP, a Texas-based law firm, appeals from a judgment of the United District Court for the Southern District of New York (Sand, J.) sanctioning Arnold & Itkin for its conduct in opposing the arbitration of a dispute between its client, Michael Enmon, and appellee Prospect Capital Corporation ("Prospect").[1]  Arnold & Itkin challenges the determination that its conduct was sanctionable and the amount and form of the sanctions imposed.  For the reasons that follow, we largely affirm the judgment of the District Court, except that we remand in part to permit the District Court to consider whether it should impose certain limits on its requirement that Arnold & Itkin's attorneys attach the sanctions order to all future applications for admission pro hac vice in the Southern District of New York.

## BACKGROUND

The sanctions imposed on Arnold & Itkin arose out of Michael Enmon's attempts to obtain a subordinated loan from Prospect to complete his acquisition of Caprock Pipe & Supply LP ("Caprock LP"), a company in the business of purchasing, refurbishing and selling pipes for

---

[1] In addition to Prospect Capital Corporation, Prospect Capital Management, John F. Barry, M. Grier Eliasek, Walter Parker and Bart de Bie were also Appellees and were Defendants in the District Court.  Most of the relevant facts involve Prospect Capital Corporation and, in any event, the individual identity of the Appellees does not affect our analysis of the issues presented in this appeal.  For convenience, unless otherwise noted, we refer to the Appellees collectively as "Prospect."

use in connection with oil and natural gas wells. In April 2006, Enmon formed a company called Caprock Pipe & Supply, Inc. ("Caprock Inc."), solely as a vehicle for borrowing the funds to purchase Caprock LP. That same month, Enmon, with the help of his then-attorney Robert Fiser, Esq., signed a letter agreement and term sheet (collectively, the "Letter Agreement") with Prospect to obtain financing for the acquisition in the form of a subordinated loan for $10 million. The Letter Agreement contained an arbitration provision that committed the parties to resolving all disputes arising thereunder through "binding arbitration in New York City." The Letter Agreement also provided that Prospect's financing proposal was subject to actual delivery of the final deal documents.

In anticipation of the deal closing in May 2006, Prospect prepared several draft documents and went so far as to forward to its corporate counsel on the deal, Vinson & Elkins LLP, "provisionally signed" signature pages of a credit agreement (the "Credit Agreement") identifying Enmon's company, Caprock Inc., as the counterparty. The signature pages were undated and unattached to a draft of the Credit Agreement. They were forwarded by email to place Vinson & Elkins in a position to circulate an executed Credit Agreement as soon as one was finalized. Indeed, the accompanying email message to Vinson & Elkins stated: "Attached are our signature pages. Please check form. DO NOT SEND OUT UNTIL YOU TALK TO ME. For V&E only."

In May 2006, based on the results of its due diligence and Enmon's belated request for an additional $2 million in financing, Prospect decided not to finance Enmon's purchase of Caprock LP.

1. The Texas TRO

In September 2006, Fiser sued Enmon in Texas state court for unpaid legal fees in connection with Fiser's work on the failed Prospect financing transaction. In contesting the lawsuit, Enmon, at this point represented by Jason Itkin, Esq., a named partner of Arnold & Itkin, filed third-party claims against Prospect, alleging common law fraud, statutory fraud under Texas state law, and tortious interference with a contract between Enmon and Caprock LP. The third-party claims were based on Prospect's decision not to consummate the financing proposed in the Letter Agreement and contemplated by the draft Credit Agreement.

Relying on the arbitration clause contained in the Letter Agreement, Prospect responded by initiating an arbitration proceeding in New York and filing a petition to compel arbitration in the United States District Court for the Southern District of New York (the "SDNY Action"). On January 10, 2007, Jason Itkin told Prospect that he intended to ask the Texas state court for a temporary restraining order (the "Texas TRO") staying the New York arbitration proceeding. In an email response the following day, Prospect's counsel advised Itkin that she would seek a temporary restraining order in the Southern District of New York (the "SDNY TRO") that same day to enjoin the Texas state court action. Itkin ignored the email and applied for the Texas TRO.

Arnold & Itkin's application for the Texas TRO was signed by Itkin under the name "Arnold & Itkin LLP." It requested not only that the Texas state court stay the arbitration proceeding, but that it issue "a temporary restraining order and temporary injunction prohibiting Prospect . . . from taking any further action in New York state or federal courts" until the Texas court had ruled on the applicability of the arbitration provision. Although the proposed order attached to the application disclosed that the "Prospect Defendants are seeking a temporary

restraining order in New York," the application failed to disclose that Prospect had already filed a complaint in New York federal court.

Both the District Court and the Texas state court granted their respective TROs on January 11, 2007.[2] The following day, instead of offering to withdraw the Texas action, Arnold & Itkin wrote a letter to both courts advising them of the dueling TROs and suggesting that the courts "dissolve both TROs and allow the proceedings in both courts to continue." At a hearing several days later, Prospect advised the Texas state court that the competing New York case was in federal court and that the Texas TRO was unconstitutional under General Atomic Co. v. Felter, 434 U.S. 12, 12-13 (1977), because it sought to enjoin a federal court action. So informed, the Texas state court promptly adjourned the hearing, effectively suspending its TRO.

In February 2007, the District Court granted Prospect's petition to compel arbitration after concluding that Enmon's objections to arbitrability "either strain[ed] the language of the [Letter Agreement] or [were] precluded by clear and controlling precedent in the Second Circuit." Enmon timely appealed the District Court's judgment, but, in the meantime, arbitration was scheduled to start on July 23, 2007.[3]

2. The Rule 60(b) Motion

Less than two weeks before the arbitration, Arnold & Itkin filed a motion in the District Court under Rule 60(b) of the Federal Rules of Civil Procedure, on behalf of Enmon and Caprock Inc. (as an intervenor), for relief from the order granting Prospect's motion to compel arbitration. The firm sought an order permitting Caprock Inc. to pursue litigation in New York

[2] Another District Judge, sitting in Part I, issued the SDNY TRO. All subsequent relevant matters were handled by Judge Sand.

[3] By summary order dated August 20, 2008, this Court affirmed the District Court's judgment compelling arbitration and enjoining the Texas action. Prospect Energy Corp. v. Enmon, 290 F. App'x 400, 401 (2d Cir. 2008).

state court for breach of the draft Credit Agreement. It argued that the signature pages for that agreement constituted "new[ly]" uncovered evidence establishing that the draft Credit Agreement had been executed and that the arbitration provision in the Letter Agreement had been superseded. Without revealing that Caprock Inc. had recently changed its corporate name to "Enmon Capital Inc.," Arnold & Itkin insisted that, regardless of Enmon's obligations to arbitrate the dispute under the Letter Agreement, Caprock Inc. was not similarly bound under the Credit Agreement, which contained no arbitration provision.[4]

The District Court concluded that Enmon's pending appeal divested it of jurisdiction to resolve the Rule 60(b) motion, which it dismissed by order dated July 24, 2007, with the warning that "it would not be inclined to grant the motion if the Second Circuit were to remand the case." In August 2007, Arnold & Itkin filed an appeal of the District Court's order denying Enmon's Rule 60(b) motion, but it voluntarily withdrew the appeal in October 2007.

### 3. The Petition to Confirm the Arbitration Award

In April 2008, the arbitrator designated to preside over the arbitration between Prospect and Enmon issued a preliminary decision in favor of Prospect. Among other things, the arbitrator found that the draft Credit Agreement was never consummated and that the Letter Agreement permitted Prospect to refuse to finance Enmon's project. Prospect immediately filed a petition to confirm arbitration with the District Court. Arnold & Itkin opposed the petition, urging that confirmation was premature because the arbitrability of the dispute was "ripe for decision in the Second Circuit Court of Appeals." It also claimed that the arbitration had gone

---

[4] For example, the brief asserted that "Caprock [Inc.] was not a party to the alleged contract or arbitration agreement between Enmon and Prospect" and that "[t]he arbitration provision in the purported agreement between Enmon and Prospect, signed before Caprock even existed, obviously cannot apply to Caprock's claims arising from a breach of a separate contract between it and Prospect."

"forward in a disjointed manner that prevented a fair presentation of the evidence," and that this "disjointed manner included[] calling witness[es] out of order, not cross-examining witnesses immediately after their direct testimony, and not allowing depositions." Arnold & Itkin also rehashed several other arguments it had previously advanced to challenge arbitrability.

In a final award on August 23, 2008, the arbitrator directed Enmon to pay Prospect $2,287,687.32 in attorneys' fees, costs, and expenses. Prospect then filed a renewed petition to confirm the arbitration award, which the District Court granted in October 2008. In November 2008, Arnold & Itkin appealed the confirmation of the award. Because the appeal was defective, Arnold & Itkin refiled a notice of appeal in January 2009, but voluntarily withdrew that appeal in April 2009.

In May 2009, Prospect moved pursuant to 28 U.S.C. § 1927 and the District Court's inherent power to recover attorneys' fees and expenses associated with its litigation of the motion to compel arbitration, the Texas TRO, the Rule 60(b) motion, confirmation of the arbitral awards both before the District Court and on appeal, and the sanctions motion itself. After briefing and oral argument, the District Court granted the motion for sanctions in part. It found that Arnold & Itkin had acted in bad faith and engaged in frivolous and vexatious litigation in seeking the Texas TRO, bringing the Rule 60(b) motion and subsequent appeal, and opposing Prospect's petition to confirm the arbitral award.

Prospect then filed a proposed judgment for $354,559 in fees incurred in connection with all of these matters. In June 2010, the District Court entered the proposed judgment against Arnold & Itkin and further directed the firm to "submit this Court's Sanctions Order with any future applications for admission pro hac vice in the Southern District of New York." We

7

interpret this directive to apply to every Arnold & Itkin lawyer who seeks to be admitted pro hac vice in the Southern District of New York.

This appeal followed.

**DISCUSSION**

The District Court imposed sanctions against Arnold & Itkin pursuant to both its inherent powers and 28 U.S.C. § 1927. In either case, we review the sanctions order for abuse of discretion, Schlaifer Nance & Co. v. Estate of Warhol, 194 F.3d 323, 333 (2d Cir. 1999), to "ensure that the district court's sanctions are not based on 'an erroneous view of the law or on a clearly erroneous assessment of the evidence,'" Wolters Kluwer Fin. Servs., Inc. v. Scivantage, 564 F.3d 110, 113 (2d Cir. 2009) (quoting Schlaifer Nance, 194 F.3d at 333). Because "'the trial court [imposing sanctions] may act as accuser, fact finder and sentencing judge'" all in one, Schlaifer Nance, 194 F.3d at 334 (quoting Mackler Prods., Inc. v. Cohen, 146 F.3d 126, 128 (2d Cir. 1998)), our review of such an order is "'more exacting than under the ordinary abuse-of-discretion standard.'" Wolters Kluwer, 564 F.3d at 113-14 (quoting Perez v. Danbury Hosp., 347 F.3d 419, 423 (2d Cir. 2003)).

"In order to impose sanctions pursuant to its inherent power, a district court must find that: (1) the challenged claim was without a colorable basis and (2) the claim was brought in bad faith, i.e., motivated by improper purposes such as harassment or delay." Schlaifer Nance, 194 F.3d at 336; see also id. at 337 (holding that a claim is "entirely without color when it lacks any legal or factual basis. Conversely, a claim is colorable when it has some legal and factual support, considered in light of the reasonable beliefs of the individual making the claim.") (internal citations omitted). Although both findings "must be supported by a high degree of specificity in the factual findings," Wolters Kluwer, 564 F.3d at 114, "bad faith may be inferred

'only if actions are so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose such as delay,'" Schlaifer Nance, 194 F.3d at 336 (citation omitted).

The showing of bad faith required to support sanctions under 28 U.S.C. § 1927 is "similar to that necessary to invoke the court's inherent power." Oliveri v. Thompson, 803 F.2d 1265, 1273 (2d Cir. 1986). In practice, "the only meaningful difference between an award made under § 1927 and one made pursuant to the court's inherent power is . . . that awards under § 1927 are made only against attorneys or other persons authorized to practice before the courts while an award made under the court's inherent power may be made against an attorney, a party, or both." Id.

1. The Texas TRO

With these principles in mind, we conclude that the District Court acted within its discretion when it sanctioned Arnold & Itkin based on its particularized findings that Arnold & Itkin acted without a colorable basis (a finding that Arnold & Itkin does not dispute) and in bad faith in procuring the Texas TRO. The District Court's bad faith determination rested on the finding that Arnold & Itkin's failure to disclose that its Texas TRO application sought to enjoin a federal court action (as opposed to a state court action) constituted a "misrepresentation[] by omission."

In support of these conclusions, the District Court pointed to the face of the Texas TRO application, which specified "it will do nothing but ensure the status quo is maintained," when in fact the TRO sought to change the status quo by enjoining the SDNY Action. Furthermore, the District Court correctly noted that "[t]he body of the TRO request . . . [was] noticeably silent as to the action already pending in federal court."

9

Arnold & Itkin disputes the District Court's finding that it concealed the existence or nature of the SDNY Action from the Texas state court. It notes that it attached an email from Prospect's counsel that referenced a pending proceeding in "United States District Court" as an exhibit to its Texas TRO application, and that it alerted both courts to the existence of dueling TROs in its letter dated January 12, 2007.

We are not persuaded that either of these documents demonstrates an absence of bad faith on Arnold & Itkin's part. The email was not cited in the text of the application itself, and the District Court could properly have concluded that a vague, passing reference to "United States District Court" in an email from opposing counsel attached as an exhibit was insufficient to disclose the critical fact that the application sought to enjoin a federal proceeding. Indeed, the email also references Arnold & Itkin's pursuit of a "stay of the New York AAA Arbitration," suggesting that the purpose of the Texas TRO application was to stay an arbitration proceeding, not a federal district court case. Nor are we persuaded that Itkin's January 2007 letter evidenced a lack of bad faith. The letter was not delivered until after the Texas state court had already granted the Texas TRO and was, therefore, too little, too late.

Arnold & Itkin also suggests that sanctions were unwarranted because the Texas TRO had no effect on the SDNY Action. We disagree that such an effect was required. In Chambers v. NASCO, Inc., 501 U.S. 32 (1991), for example, the Supreme Court upheld sanctions even though the sanctioned conduct had not disrupted the relevant litigation. The district court in Chambers had enjoined the defendants from altering the status quo of a television station the plaintiffs sought to purchase pending final determination of the plaintiff's suit to prevent a sale of the station to third parties. See NASCO, Inc. v. Calcasieu Television and Radio, Inc., 124 F.R.D. 120, 127 (W.D. La. 1989). After a bench trial on the merits and "during the delay for

10

submission of authorities," the defendants nevertheless "petitioned the FCC for permission to [change aspects of the television station] site," in violation of the district court's order. Id. at 128-29. Soon after the defendants made that application, "the informal intervention of [the district court], and [the plaintiff's] threat of further contempt sanctions, persuaded [the defendants] to withdraw the application." Id. at 129. The FCC application in Chambers caused no disruption in the federal court action, and yet the Supreme Court affirmed the sanctions based on the defendants' bad-faith conduct before the FCC. Chambers, 501 U.S. at 58.

We read Chambers to mean that sanctions may be warranted even where bad-faith conduct does not disrupt the litigation before the sanctioning court. This accords with our sanctions jurisprudence, which counsels district courts to focus on the purpose rather than the effect of the sanctioned attorney's activities. See Schlaifer Nance, 194 F.3d at 336 (sanctions are appropriate if "(1) the challenged claim was without a colorable basis and (2) the claim was brought in bad faith, i.e., motivated by improper purposes such as harassment or delay") (emphasis added).

Here, the Texas TRO's intended effect on the SDNY Action was greater than the intended effect of the FCC application on the litigation in Chambers: Arnold & Itkin sought to enjoin the SDNY Action entirely. That Arnold & Itkin's attempt to derail the District Court proceeding was quickly thwarted by vigilant opposing counsel does not make the firm's purpose any less improper.

Even if we were to focus on the effect of the conduct as opposed to its purpose, we are not persuaded that the Texas TRO's actual effect on the SDNY Action was as minimal as Arnold & Itkin now suggests. First, Arnold & Itkin's conduct "multiplie[d] the proceedings" before the District Court by forcing Prospect to seek its own, federal TRO to preempt the illegal Texas

11

TRO.  See 28 U.S.C. § 1927.  Second, the firm forced the District Court to consider its frivolous claim that the competing SDNY TRO should be dissolved in light of the Texas TRO.

### 2. The Petition to Confirm the Arbitration Award

The District Court also sanctioned Arnold & Itkin for its opposition to Prospect's petition to confirm the arbitration award.  The court found that the law firm made "frivolous arguments that misrepresented the record" and gave as a specific example that "Arnold & Itkin objected to the arbitrator's calling witnesses out of order, even though Arnold & Itkin had requested that it be able to call witnesses out of order."

The record supports the District Court's finding that the opposition to Prospect's petition lacked a colorable basis and was brought in bad faith.  In its opposition papers, Arnold & Itkin claimed that "Prospect, with the tribunal's permission, called witnesses out of order and did not subject them to cross-examination immediately."  That claim, however, was undermined by an email dated July 21, 2007, from the arbitrator, which demonstrated that Arnold & Itkin – not Prospect's counsel – requested calling witnesses out of order during the arbitration.  In that email, the arbitrator warned Itkin to "pare down his 'out of order' witnesses," to "have very good reason why it is really necessary to take such witnesses out of order," and to be mindful of "[t]he contemplated length of [such witnesses'] testimony."  Contrary to appellant's contention, the District Court's findings of bad faith are detailed and particularized. We see no abuse of discretion in the District Court's decision to sanction Arnold & Itkin for its gross mischaracterization of the arbitral proceedings.

### 3. The 60(b) Motion

We also conclude that the District Court acted within its discretion when it sanctioned Arnold & Itkin for filing the Rule 60(b) motion for relief from the order to compel arbitration.

There was ample evidence that the motion as a whole contained "persistent misrepresentations" and was made in bad faith. Prospect Capital Corp. v. Enmon, No. 08 Civ. 3721 (LBS), 2010 WL 907956, at *5 (S.D.N.Y. Mar. 9, 2010).

First, Arnold & Itkin falsely stated that the evidence relating to the alleged consummation of the Credit Agreement was "new" or "newly discovered," even though the record demonstrates that Arnold & Itkin had known about the evidence for over a year. In the January 12, 2007 letter to the Texas and New York courts alerting them to the dueling TROs, Itkin stated that "[t]he deal was supposed to close on May 12, 2006. In fact, final deal documents were prepared and signed by all the parties on that date" (emphasis added). Similarly, in connection with Prospect's petition to compel arbitration the following month, Arnold & Itkin informed the District Court that Prospect Capital Corporation's chief executive officer had "apparently signed [those documents], although they were never delivered back." Second, the Rule 60(b) motion omitted the critical fact that, when Prospect delivered the signature pages to its counsel, it did so with express instructions that they not be forwarded to Enmon or to anyone else. Third, Arnold & Itkin strategically filed the motion on behalf of both Enmon as a party and Caprock Inc. as an independent intervenor in the action, without disclosing that the latter's official name had been changed to "Enmon Capital Inc." Doing so permitted the firm to argue that Caprock Inc. should not be bound by the arbitration clause in the Letter Agreement. In the motion, moreover, Arnold & Itkin described Enmon as "part owner of Caprock" and otherwise strained to suggest that Enmon and Caprock Inc. were two independent entities, even though Caprock Inc. was a shell company controlled entirely by Enmon.

4. Voluntarily Withdrawn Appeals

Beginning with Cheng v. GAF Corp., we have expressed a preference that district courts not sanction parties for filing frivolous appeals in this Court. 713 F.2d 886, 892 (2d Cir. 1983), vacated and remanded on other grounds, 472 U.S. 1023 (1985). Our reluctance has been due in part to a concern that "[a] rule permitting a district court to sanction an attorney for appealing an adverse ruling might deter even a courageous lawyer from seeking the reversal of a district court opinion." Id. at 892. By the same token, "we . . . do not want to discourage voluntary dismissals, which save the time not only of appellees but also of this court, by a readiness to grant sanctions." Overseas Cosmos, Inc. v. NR Vessel Corp., 148 F.3d 51, 52 (2d Cir. 1998) (internal quotation marks omitted).

Even with these policy concerns in mind, however, we have never established a bright-line rule prohibiting district courts from ever sanctioning a party for a voluntarily withdrawn, frivolous appeal. We decline to do so now, and we affirm the District Court's decision to sanction Arnold & Itkin for its voluntarily dismissed appeals of the court's rulings on the Rule 60(b) motion and Prospect's petition to confirm the arbitral award.

Having concluded that the Rule 60(b) motion and Arnold & Itkin's opposition to Prospect's petition were themselves sanctionable, we are hard put to describe the District Court's decision to sanction Arnold & Itkin's appeal of those matters as an abuse of discretion. In any event, the record supports the court's finding that Arnold & Itkin's voluntarily withdrawn appeals were taken purely for dilatory and resource-draining reasons relating to the district court litigation. When opposing the petition to confirm the arbitral award, for example, Arnold & Itkin argued that confirmation was premature because its appeal of the District Court's decision compelling arbitration (which was ultimately unsuccessful) was still pending. This strongly

14

suggests that Arnold & Itkin's purpose in appealing various rulings was partly to prolong the district court litigation, and that it withdrew those appeals when it became clear that they would not serve that purpose.

Two reasons persuade us that permitting rather than categorically foreclosing district court sanctions for voluntarily withdrawn frivolous appeals will have a salutary effect overall. First, appellees contesting frivolous appeals may be deterred from consenting to voluntary dismissal if it means surrendering the chance to recover attorneys' fees before the district court. Second, we have no jurisdiction once an appeal has been voluntarily dismissed, and it is then entirely in the hands of the district court to monitor a party's conduct. Prohibiting district courts from imposing sanctions in these unique circumstances might encourage the malicious law firm to manipulate the appeals process like a yo-yo. That said, we caution that the sanction power for voluntarily dismissed appeals is to be used sparingly, so as not to discourage parties who wish to preserve their appellate rights, only to later decide an appeal is not worth pursuing.

5. Additional Arguments

Arnold & Itkin also challenges the form and amount of the District Court's sanctions on the grounds that it improperly (1) sanctioned the law firm as a whole, rather than sanctioning Jason Itkin and the other individual attorneys who participated directly in the litigation, (2) required all Arnold & Itkin lawyers to attach the sanctions order to any future pro hac vice applications in the Southern District of New York, and (3) imposed costs associated with litigating the sanctions motion itself. The firm also complains that it was deprived of procedural due process because it was not given an opportunity to contest every basis for the sanctions award. We address each argument in turn.

15

We disagree with Arnold & Itkin's assertion that the District Court was without authority under 28 U.S.C. § 1927 to award sanctions against the "firm as a whole" for the "actions of various lawyers." As an initial matter, the District Court imposed sanctions pursuant to both its inherent powers and § 1927. There is no serious dispute that a court may sanction a law firm pursuant to its inherent power. We see no reason that a different rule should apply to § 1927 sanctions, and, in any event, we have previously upheld the award of § 1927 sanctions against a law firm. See Apex Oil Co. v. Belcher Co., 855 F.2d 1009, 1019-20 (2d Cir. 1988). In addition, we would upset a relatively long-standing practice among district courts in our Circuit if we were to hold that law firms may not be sanctioned under § 1927 for the acts of certain attorneys. See Reichmann v. Neumann, 553 F. Supp. 2d 307, 327-28 (S.D.N.Y. 2008) (imposing sanctions on a law firm pursuant to 28 U.S.C. § 1927); Saratoga Inv. Co. v. O'Conner, No. 97 Civ. 729 (FJS), 1997 WL 473066, at *2 (N.D.N.Y. Aug. 7, 1997) (same); ACLI Gov't Secs., Inc. v. Rhoades, 907 F. Supp. 66, 71-72 (S.D.N.Y. 1995) (same).[5] The practice of imposing § 1927 sanctions on law firms has also been approved by our sister circuits. See LaPrade v. Kidder Peabody & Co., 146 F.3d 899, 900 (D.C. Cir. 1998); Avirgan v. Hull, 932 F.2d 1572, 1582 (11th Cir. 1991); Baker Indus., Inc. v. Cerberus Ltd., 764 F.2d 204, 206 (3d Cir. 1985).

The District Court also properly attributed the actions of Jason Itkin to the entire firm. Itkin was a founding, named partner of a firm that, according to counsel at oral argument, had ten or fifteen lawyers during the relevant time period. Tr. of Oral Arg. at 25. Throughout the litigation, Itkin's actions were indistinguishable from those of Arnold & Itkin as a firm.

---

[5] Even when they have refrained from imposing sanctions, district courts in our Circuit have assumed that § 1927 sanctions are available against law firms. See Lynch v. United Servs. Auto Ass'n, 491 F. Supp. 2d 357, 365-66 (S.D.N.Y. 2007); Weaver v. Chrysler Corp., No. 96 Civ. 2245 (DAB), 1998 WL 477725, at *2-3 (S.D.N.Y. Aug. 14, 1998), vacated and remanded on other grounds, 14 F. App'x 136 (2d Cir. 2001); In re Sheldon & Co., No. 93 Civ. 4209 (RO), 1997 WL 728415, at *5 (S.D.N.Y. Nov. 21, 1997).

Likewise, in opposing Prospect's sanctions motion, the firm consistently accepted responsibility for conducting the underlying litigation.

In sum, nothing in the language of 28 U.S.C. § 1927, in our case law regarding that statute or a district court's inherent powers, or in counsel's actions in this case leads us to think that the District Court was without authority to impose sanctions on Arnold & Itkin as a whole.

We also substantially affirm the District Court's sanctions order insofar as it directed that lawyers from Arnold & Itkin submit the order itself with any future pro hac vice applications in the Southern District of New York. Although we have affirmed similar sanctions against individual attorneys without any apparent temporal limits, see MacDraw, Inc. v. CIT Group Equip. Fin., Inc., 138 F.3d 33, 37-38 (2d Cir. 1998), this sanctions order involves an entire law firm, including lawyers who joined the firm after this litigation had already concluded and therefore could not have had any role in it. Accordingly, we remand to the District Court to consider, with or without a hearing, only whether to impose a temporal limit on this component of its order, and whether to exclude from the scope of the order all attorneys who joined the firm after June 23, 2010, when the sanctions order was entered. We note, for example, that in Gallop v. Cheney, 667 F.3d 226, 230 (2d Cir. 2012), we recently required an attorney to provide notice of his sanction to any federal court before which he sought to appear "for a period of one year."

Under these circumstances, we also see no error in the District Court's order requiring Arnold & Itkin to pay for the costs associated with defending the sanctions motion itself. The fact that it denied the sanctions motion in part did not prevent the District Court from imposing the full cost of litigating the motion, which, if not completely successful on all the grounds urged by Prospect, was nevertheless well founded. In challenging the fee amount, Arnold & Itkin observes that a very large portion of the fees related to litigating the sanctions motion itself

17

(roughly $260,000 of the $354,559 awarded). But the high cost of preparing the sanctions motion is attributable largely to Arnold & Itkin's extraordinary pattern of misrepresentations and unreasonable litigation in this case. Cf. In re 60 E. 80th St. Equities, Inc., 218 F.3d 109, 120 (2d Cir. 2000) ("relevant to our [sanctions] inquiry is the fact that [appellant's] behavior is repetitive.").

Lastly, Arnold & Itkin asserts that it was deprived of due process because it "had no opportunity to respond to Prospect's allegation" that Arnold & Itkin "concealed the substance of the email transmitting Prospect's signature pages" to Vinson & Elkins. It states that the allegation was first "lodged" in Prospect's final brief in support of its sanctions motion. This argument is meritless because Prospect's initial brief requesting sanctions contained this allegation.

**CONCLUSION**

Arnold & Itkin's remaining arguments are without merit. For the foregoing reasons, we AFFIRM the judgment of the District Court in part, but we REMAND the order insofar as it required all Arnold & Itkin attorneys to attach the sanctions order to all future pro hac vice applications in the Southern District of New York, so that the District Court may consider whether a temporal limit should apply to that part of the order and whether to exclude from the order any attorneys who joined the firm after June 23, 2010.

18