JED S. RAKOFF, U.S.D.J.
Courts play a critical role in ensuring the fairness of class action settlements. One important component of this role is monitoring the intervention of "objectors," members of the class who file objections to a proposed settlement prior to the Court's determination of whether or not to finally approve the settlement. Objectors - when acting in good faith - can help safeguard the interests of absent class members. See, e.g., White v. Auerbach, 500 F.2d 822, 828 (2d Cir. 1974).[1] Others, however, file objections and appeals in a bad-faith attempt to line their own pockets, single-handedly holding up distribution of class funds until the class is cornered into paying them to dismiss their frivolous appeals. Courts must strike a balance between protecting class interests by preserving the role of legitimate objectors and protecting the class from a second victimization by unscrupulous, extortionate objectors.[2]
The case at hand presents the difficulty of this balancing act - and the high stakes attached. On June 22, 2018, the Court approved a $ 3 billion settlement of this case, one of the largest class settlements in recent years. See Opinion and Order dated June 22, 2018 ("Settlement Op."), Dkt. 834. However, more than seven months later, the injured class members have received no compensation whatsoever. Class Plaintiffs admit that most of the delay up to this point should be attributed, not to the pendency of the objectors' appeals, but to the claims administration process. See Declaration of the Claims Administrator Regarding Readiness to Distribute ("Claims Dec"), Ex. H, ¶¶ 3-5, Declaration of Jeremy A. Lieberman in Support of Plaintiffs' Renewed Motion for Sanctions Against the Gielata Objectors and to Increase Appeal Bond ("Lieberman Dec"), Dkt. 910. However, Class Plaintiffs assert that $ 1 billion dollars is now ready for distribution, were it not for the pendency of the sole remaining appeal, filed by objectors Joseph, Richard, and Emelina Gielata (collectively, "the Gielatas"). See Claims Dec. ¶ 8. As distribution becomes further delayed, it is estimated that additional administration fees will mount at a rate of approximately $ 155,000 per month. See Claims Dec. ¶ 13. If the Gielatas' appeal is a legitimate one, filed in good faith, such continued delay in distribution is warranted. If it is a bad-faith attempt to hold class funds hostage to extract a personal payoff, then it represents a grave abuse of the objections process at the cost of the absent class members.
By Opinion and Order dated September 19, 2018 ("Op."), Dkt. 896, the Court denied *429 Class Plaintiffs' previous motion for sanctions in an abundance of care for protecting the important role of good-faith objectors, despite finding significant indications of bad faith in the Gielatas' behavior over the course of the litigation thus far. It did, however, require the Gielatas to post a $ 50,000 appeal bond.
On February 14, 2019, the Court issued a bottom-line order denying Class Plaintiffs' second motion for sanctions against the Gielatas, as well as all parties' motions for a change in the previously-set appeal bond. Dkt. 913. The reasons for this decision are set forth below. In brief, while the Gielatas' behavior on appeal only strengthens the Court's concerns that they are acting in bad faith, the Court does not find that enough has changed to warrant reversing its prior determination as to sanctions at this time, especially as, since the Court's prior decision on sanctions, a relevant amendment to Rule 23 of the Federal Rules of Civil Procedure has come into effect. This amendment requires judicial approval of any monetary settlements to objectors and offers another avenue, aside from sanctions, for courts to monitor potentially abusive behavior.
I. Background
The Court here assumes full familiarity with the long history of this litigation and the underlying facts, which are more fully laid out in the Court's opinion approving the settlement, see Settlement Op., and in the Court's prior decision on sanctions, see Op. As relevant here, the Court, on June 22, 2018, approved a $ 3 billion settlement in the instant class action, in the process addressing and rejecting objections filed by various objectors including Richard and Emelina Gielata (whose objections were drafted by their son, Joseph Gielata). At that time, the Court declined to reach Class Plaintiffs' allegations that Richard and Emelina Gielata were acting with "improper motives including...seeking to extort personal payments through the device of frivolous appeals." Id. at 4 n.5. However, the Court expressly retained jurisdiction to address any past or future objector efforts at extortion. See Order dated May 22, 2018, at 2, Dkt. 818 ("[O]bjectors were reminded that by filing their objections to the class settlement, they and their counsel were subject to the continuing jurisdiction of the Court and that, if appropriate, the Court would retain jurisdiction to inquire into their compliance with Rule 11 and analogous provisions of federal law"); see also June 4, 2018 Hr'g Tr. at 55:23-56:6 ("I have expressly retained jurisdiction in this case over the objectors even after I issue my final rulings on the matters before me today.").
Richard, Emelina, and Joseph Gielata subsequently filed a notice of appeal of the Court's approval of the settlement. See Dkt. 849. Class Plaintiffs then filed a motion for sanctions and for the posting of appeal bonds, motions made against the Gielatas and against another objector who had filed an appeal at that time (but has since withdrawn it). See Dkt. 852.
As to the Gielatas, the Court denied the motion on the ground that "at least one or more of the objections raised by the Gielatas had an arguably colorable basis" and "their behavior in pursuing these objections, while less than ideal, did not exhibit total bad faith and has not materially prejudiced Class Plaintiffs." Op. at 26. However, the Court found itself "deeply troubled by some of the Gielatas' conduct," Op. at 22, and, accordingly, "retain[ed] the right to revisit this conclusion in the future," noting that the Gielatas' behavior on appeal already suggested the potential for continuing "gamesmanship." Op. at 25-26.
The Court did, however, grant Class Plaintiffs' motion for sanctions against Joshua R. Furman, Esq. ("Furman"), attorney for objector Spencer Bueno ("Bueno").
*430 As noted, Bueno subsequently withdrew his appeal. See Dkt. 903.
While declining to impose sanctions against the Gielatas at that time, the Court granted Class Plaintiffs' motion for an appeal bond, directing the Gielatas to post a $ 50,000 bond on the ground that the appeal lacked merit, that they had exhibited bad-faith conduct, that they posed a risk of non-payment due to their locations in different jurisdictions and history of fraud, and that they had the ability to pay. Id. at 30.
On December 20, 2018, Class Plaintiffs filed the instant renewed motion for sanctions and for an increase in the appeal bond against the Gielatas. See Plaintiffs' Memorandum of Law in Support of their Renewed Motion for Sanctions Against the Gielata Objectors and to Increase Appeal Bond ("Mem."), Dkt. 909; Plaintiffs' Reply Memorandum of Law in Further Support of their Renewed Motion for Sanctions Against the Gielata Objectors and to Increase Appeal Bond ("Reply"), Dkt. 912. The Gielatas opposed the imposition of any sanctions, argued that the appeal bond should be reduced or eliminated, and argued that Class Plaintiffs' counsel should be censured. See Richard, Emelina, and Joseph Gielata's Memorandum of Law in Opposition to Plaintiffs' Renewed Motion for Sanctions and to Increase Appeal Bond ("Op."), Dkt. 911.
II. Motion for Sanctions
Class Plaintiffs argue that the Gielatas' conduct subsequent to the Court's prior decision, viewed in the context of their past behavior, confirms that they are driven by improper personal financial motives in pursuing their appeal. See Mem. at 1. Accordingly, Class Plaintiffs renew their request for sanctions against the Gielatas.
A. Legal Standard
"A federal district court possesses broad inherent power to protect the administration of justice by levying sanctions in response to abusive litigation practices." Penthouse Int'l, Ltd. v. Playboy Enters., Inc., 663 F.2d 371, 386 (2d Cir. 1981). The court's inherent power has been long-recognized to include the power "to discipline attorneys who appear before it." Chambers v. NASCO, Inc., 501 U.S. 32, 43, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991) (citing Ex Parte Burr, 22 U.S. 529, 9 Wheat. 529, 6 L.Ed. 152 (1824) ). While "the court should ordinarily rely on the Rules rather than the inherent power" to sanction bad-faith conduct, if "neither the statute nor the Rules are up to the task, the court may safely rely on its inherent power." Id. at 50, 111 S.Ct. 2123. A court may issue sanctions pursuant to its inherent power "against an attorney, a party, or both." Oliveri v. Thompson, 803 F.2d 1265, 1273 (2d Cir. 1986).
Sanctions are justified pursuant to the court's inherent power where there is a "specific finding" of bad faith and "clear evidence that the conduct at issue is (1) entirely without color and (2) motivated by improper purposes." Wolters Kluwer Fin. Servs., Inc. v. Scivantage, 564 F.3d 110, 114 (2d Cir. 2009). In determining whether bad faith warrants sanctions, courts "focus on the purpose rather than the effect of the sanctioned attorney's activities." Enmon v. Prospect Capital Corp., 675 F.3d 138, 145 (2d Cir. 2012) (finding that "sanctions may be warranted even where bad-faith conduct does not disrupt the litigation before the sanctioning court").
Section 1927 authorizes the imposition of sanctions against "any attorney...who so multiplies the proceedings in any case unreasonably and vexatiously" in the form of "excess costs, expenses and attorney's fees reasonably incurred because of such conduct." 28 U.S.C. § 1927. The purpose of the statute is to "deter unnecessary delays in litigation."
*431 Oliveri, 803 F.2d at 1273. Much like sanctions imposed pursuant to the court's inherent power, section 1927 sanctions require "a clear showing of bad faith on the part of an attorney," which "may be inferred only if actions are so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose such as delay." Salovaara v. Eckert, 222 F.3d 19, 35 (2d Cir. 2000). See also Oliveri, 803 F.2d at 1273 ("[T]he only meaningful difference between an award made under § 1927 and one made pursuant to the court's inherent power is...that awards under § 1927 are made only against attorneys or other persons authorized to practice before the courts while an award made under the court's inherent power may be made against an attorney, a party, or both.").
As this Court noted in its prior opinion on sanctions in this matter, the Second Circuit has described the determination as to whether to impose sanctions as "one of the most difficult and unenviable tasks for a court," Schlaifer Nance & Co., Inc. v. Estate of Warhol, 194 F.3d 323, 341 (2d Cir. 1999), and this difficulty takes on particular weight in the context of monitoring the actions of objectors in class actions.
B. Colorable Basis
"Conduct is entirely without color when it lacks any legal or factual basis." Wolters Kluwer, 564 F.3d at 114. In making this assessment, the Court must consider "whether a reasonable attorney...could have concluded that the facts supporting the claim might be established, not whether such facts actually had been established." Schlaifer Nance, 194 F.3d at 337.
In their objection to the settlement, Richard and Emelina Gielata's central argument was that the class was overbroad and therefore failed to satisfy the Rule 23 requirement that diverse groups and individuals in the class be adequately represented. See Shareholder Objections to Proposed Settlement, Plan of Allocation, Proof of Claim, Class Notice and Request for Attorney's Fees ("G. Obj."), Dkt. 813. Specifically, they argued that an intraclass conflict existed between domestic claimants and those foreign claimants whose purchases of Petrobras securities were connected to the United States solely by the fact that their transactions were cleared through the Depository Trust Company in New York ("DTC claimants"). See G. Obj. at 1-9. Another objector, William Haynes, also argued that an intraclass conflict existed between domestic and DTC claimants. See Objection of William Thomas Haynes, as Trustee for the Benefit of W Thomas and Katherine Haynes Irrevocable Trust for the Benefit of Sara L. Haynes, to the Proposed Class Action Settlement and Attorneys' Fee Request ("H. Obj."), Dkt. 797. Haynes took the position that an appropriate settlement could be achieved by certifying subclasses providing separate representation to the domestic and DTC claimants.[3] H. Obj. at 6-7.
The Gielatas rejected the notion of subclassing, arguing that "the problem here is not the 'classic' Amchem conflict necessitating subclasses," but a "structural conflict [ ] between... class member claimants versus claimants that cannot be part of the class because their claims are barred by Morrison." G. Obj. at 4. Accordingly, the Gielatas argued that DTC claimants had to be excluded from the class entirely to make the settlement permissible and recommended the appointment of *432 a special master to filter out the DTC claimants. Id.
In approving the settlement, the Court rejected the Gielatas' argument, finding that defendants had waived any domesticity challenge for settlement purposes and that DTC claimants could be a part of the settlement class. See Settlement Op. at 12. The Court also rejected Haynes' argument that there was a fundamental conflict here between the DTC claimants and the domestic claimants such that division into subclasses was required, as "all plaintiffs have been placed on an equal footing because defendants waived any domesticity challenge for settlement purposes," "both the DTC claimants and domestic claimants in this case suffered the same injury and are receiving the same relief," and "the parties provide an explanation for why the weaker claims are being treated equally to the stronger ones: the substantial administrative costs of differentiating between the comparatively small number of DTC claimants and the overwhelming majority of domestic claimants." Settlement Op. at 14-18.
The Gielatas also objected to the attorneys' fees requested on several grounds. While the Court chose to reduce the attorneys' fees on grounds different from those suggested by the Gielatas, the Court did specifically take note of the Gielatas' objections as supportive of the reduction. See Op. at 34.
Now, on appeal, the Gielatas are not renewing their argument that the non-domestic claimants should have been excluded from the settlement class but are instead adopting a version of Haynes' argument, contending that the Court should have split the class into independently-represented subclasses. See Brief and Special Appendix for Objectors-Appellants, No. 18-2270, Dkt. 69 ("App. Br."). Unlike Haynes, the Gielatas argue that the class should be split into a "shares" subgroup (of shareholders, who have entirely domestic claims) and a "notes" subgroup (of notes-holders, who have both domestic and non-domestic claims). Id. at 55.
Class Plaintiffs' primary argument for imposing sanctions at this juncture is that the Gielatas waived this argument by their failure to assert it in their objections below. See Mem. at 14-15. However, the Second Circuit has set out a fairly flexible approach to waiver, with a "general rule that a federal appellate court does not consider an issue not passed upon below," but with the determination as to "what questions may be taken up and resolved for the first time on appeal... left primarily to the discretion of the courts of appeals, to be exercised on the facts of individual cases." Ford v. Bernard Fineson Development Center, 81 F.3d 304, 307 (2d Cir. 1996). This is especially true where "argument [in district court], although different in emphasis from the point pressed on appeal, at least introduced the notion." Higgins v. N.Y. Stock Exch., Inc., 942 F.2d 829, 832 (2d Cir. 1991) ; see also Ford, 81 F.3d at 307 (distinguishing between an appellant "rais[ing] an entirely new issue on appeal" and one "proffering a new legal argument that concerns an issue already considered at some length by the district court").
While the Gielatas did not raise the issue of subclassing in this Court, this Court considered the issue of subclassing at length in its opinion approving the settlement. Accordingly, the Court is unpersuaded by Class Plaintiffs' arguments that the Gielatas' appeal lacks a colorable basis because it is based on a waived argument.[4]
*433 That said, the Court considers the Gielatas' subclassing argument meritless. As discussed at length in the prior opinion, two of the three named plaintiffs in the case have exclusively domestic claims, and, accordingly, served as domestic-only class representatives representing the type of interests that the Gielatas now argue are unrepresented without subclassing. These plaintiffs were actively involved in settlement negotiations and did not object to the equal treatment of domestic claimants, while acting under a fiduciary duty to their clients to ensure that the settlement advanced those clients' interests. See Settlement Op. at 19-20.
In short, the Gielatas' argument on appeal, while different than the argument presented in their objection, occupies essentially the same status as far as sanctions are concerned: while the argument is, in the Court's view, lacking in merit, it is not entirely unlike the kind of argument that the Court might expect from a legitimate objector.
C. Bad Faith
As discussed at length in this Court's prior opinion, the Gielatas have a history of engaging in extortionate behavior to great personal profit. In Gielata v. Eisenhofer, No. 11-cv-442-PB (D.N.H. Nov. 30, 2012), Joseph Gielata, representing his father, filed a class action on behalf of all settlement class members for breach of fiduciary duty against a law firm that had secured a $ 3.2 billion settlement for the class, and subsequently voluntarily dismissed the case in return for a $ 2 million private payment. As this Court found in its prior opinion, "[w]hile different in procedure, this was the substantive equivalent of an extortionate objection, using a class action as a vehicle to realize large personal profits without benefitting the class." Op. at 24. Joseph Gielata, a member of the Delaware bar, also pled guilty to misdemeanor theft in 2006 for arranging sham transactions to profit from PayPal's money-back guarantee and was publicly reprimanded by the Supreme Court of Delaware. See In re Gielata, No. 373, 2007, 2007 WL 2422148, at *2, 2007 Del. LEXIS 376, at *5 (Del. Aug. 28, 2007).
In the instant action, Joseph Gielata, who has not maintained active status with the Delaware bar, prepared the objection on behalf of his parents and attempted to participate as their effective attorney in calls and correspondence with the Court, without seeking pro hac vice admission, entering an appearance, or otherwise seeking permission. The Court eventually had to direct Joseph Gielata not to attempt to join further calls with the Court representing his parents. As Joseph Gielata complied with this directive, the Court, while finding Joseph Gielata's contentions concerning the permissibility of his behavior "less than convincing," declined to sanction him for the unauthorized practice of law. Op. at 25.
As the Court noted in its prior opinion, the Gielatas' notice of appeal was filed on behalf of Richard, Emelina, and Joseph Gielata, and attached a notice of assignment, executed on July 23, 2018, purportedly assigning to Joseph Gielata "all associate rights...as to ONE (1) SHARE in the Class Action settlement." See Dkt. 849 at 4. The agreement explicitly states that it is for the purpose of "confer[ring] Article III standing on Joseph Gielata to prosecute any objection or appeal in the Class Action" as "it is not economically feasible for the Shareholders to hire a lawyer to protect their rights in connection with the Class Action" and "Joseph Gielata possesses the resources and legal knowledge to prosecute an appeal." Id. In other words, the assignment appeared to be executed for the explicit purpose of circumventing pro hac vice admission requirements of the Court of Appeals. Op. at 26. But this is a *434 question for the Second Circuit, not this Court.
Subsequent to the Court's prior decision on sanctions, there have been additional indications of gamesmanship before the Second Circuit. The Gielatas have filed a single appellate brief, with a note beneath Joseph Gielata's name that the "[t]his document was drafted in whole, or substantial part, by an attorney." See App. Br. This appears to mirror conduct that the Second Circuit has previously considered grounds for sanctions. See Bletas v. Deluca, No. 11-cv-5422, 2013 U.S. App. LEXIS 25925, at *2 (2d Cir. June 18, 2013) (finding sanctions appropriate where appellant "has engaged in the unauthorized practice of law by acting on behalf of the other, purportedly pro se Appellants and exerted significant...control over the Appellants' filings in this appeal"). The Gielatas also opposed Class Plaintiffs' efforts to voluntarily dismiss the appeal that Class Plaintiffs had filed of Class Plaintiffs' attorneys' fee award in a manner that it is difficult to characterize as anything but obstructionist.[5] See In re Petrobras Sec. Litig., No. 18-2324-cv, Dkt. 68.
The Court concurs with Class Plaintiffs that the Gielatas' sudden shift on appeal from arguing that subclassing is inadequate to arguing that subclassing is required carries the strong scent of a fishing expedition motivated by a desire to object, rather than particular objections. But, as discussed above, the Gielatas are not necessarily barred from shifting their arguments on appeal. Similarly, while Class Plaintiffs argue that the Gielatas have evinced bad faith in their refusal to stipulate that the appeal relates only to the Plan of Allocation, see Mem. at 20, the Gielatas are not required to agree to such a stipulation.
D. Appropriateness of Sanctions
The Second Circuit has expressed a "preference that district courts not sanction parties for filing frivolous appeals." Enmon v. Prospect Capital Corp., 675 F.3d 138, 146 (2d Cir. 2012). At the same time, it has explicitly "decline[d]" to "establish[ ] a bright-line rule" when doing so would create a gap in oversight in situations where appeals are voluntarily withdrawn before the appellate court has had the opportunity to consider sanctionable conduct. Id. at 146-47 ("Prohibiting district courts from imposing sanctions in these unique circumstances might encourage the malicious law firm to manipulate the appeals process like a yo-yo."). Accordingly, as this Court recognized in its prior opinion, sanctions may be appropriate as class action objectors pursue frivolous appeals since "[t]o treat the filing of frivolous objections in the district court and the equally-frivolous appeal of the denial of one of those objections as two unconnected actions... would be to blind oneself to the reality of how the scheme of ... extortionate objectors actually works." Op. at 19. It is the combination of the initial objection and subsequent appeal that creates the potential for extortion.
Here, however, while harboring grave doubts concerning the Gielatas' motivations, the Court does not view the imposition of sanctions in district court as appropriate in the current posture of the case. The Court evaluated the arguments for sanctions and declined to impose them against the Gielatas in its prior opinion, issued after the Gielatas filed their objections *435 and notice of appeal. All subsequent conduct has been solely before the Second Circuit. As the appeal remains pending, this is not a case - at least at this point - where the appeal has been dismissed before the Second Circuit has had the opportunity to evaluate the appropriateness of sanctions. The Second Circuit maintains the full capacity to consider whether sanctions are appropriate given the meritless nature of the appeal and the apparent attempts to evade attorney admission requirements in the conduct of the appeal. Accordingly, Class Plaintiffs' renewed motion for sanctions by the district court is denied.
In their opposition, the Gielatas argue that the Court should censure Class Counsel for making "personal attacks" on Joseph Gielata in pursuing sanctions against him. Opp. at 18. However, Class Plaintiffs have raised legitimate concerns of bad faith and improper purpose on the part of the Gielatas, based in part on their recounting of Joseph Gielata's history of involvement in bad faith and unethical dealings. The Court further stresses that its declination to impose sanctions is by no means a rejection of Class Plaintiffs' concerns as meritless but is based largely on the posture of the case at this point. Accordingly, the Gielatas' motion to censure Class Counsel is denied.
III. Motion for an Appellate Bond
Under Rule 7 of the Federal Rules of Appellate Procedure, "[i]n a civil case, the district court may require an appellant to file a bond or provide other security in any form and amount necessary to ensure payment of costs on appeal." To determine whether a bond is appropriate, courts consider the following factors: "(1) the appellant's financial ability to post a bond, (2) the risk that the appellant would not pay appellee's costs if the appeal loses, (3) the merits of the appeal,[6] and (4) whether the appellant has shown any bad faith or vexatious conduct." Stillman v. InService Am., Inc., 838 F.Supp.2d 138, 140 (S.D.N.Y. 2011).
In the Court's prior opinion on sanctions and appeal bonds, it directed the Gielatas to post an appeal bond in the amount of $ 50,000. The Gielatas have done so. However, both Class Plaintiffs and the Gielatas now argue that this decision should be revised.
Class Plaintiffs argue that the Gielatas' recent conduct warrants an increase in the amount of the appeal bond to at least $ 1.395 million (representing administrative costs for a 9-month delay). See Reply at 8. Courts in this district have found that Rule 7 bonds may include administrative expenses. See In re Credit Default Swaps Antitrust Litig., No. 13-md-2476, 2016 WL 2731524, at *19 (S.D.N.Y. Apr. 26, 2016) ("when an objector lodges a frivolous appeal to a class action settlement, a district court may impose a Rule 7 Bond in the amount of the additional administrative expenses that are reasonably anticipated from the pendency of the appeal"); In re Gen. Elec. Co. Sec. Litig., 998 F.Supp.2d 145, 151 (S.D.N.Y. 2014) (noting that "the Court of Appeals may impose an award of damages on an appellant pursuing a frivolous appeal, and a district court may consider that likelihood is assessing the scope and amount of a Rule 7 Bond."). However, the Court must also take care not to "create an impermissible barrier to appeal" in setting the bond amount. Gen. Elec. Co., 998 F.Supp.2d at 151. A bond in the amount that Class Plaintiffs suggest would indubitably be such a barrier.
Conversely, the Gielatas now argue that the appeal bond should be reduced *436 to $ 2,000 to cover only the costs of printing materials for the appeal. But, as discussed above, courts are not limited to printing costs in calculating an appeal bond and may include additional costs in the calculation where merited. The bond of $ 50,000 previously imposed by this Court is well within the range of those imposed by other courts within this district. See, e.g., In re Currency Conversion Fee Antitrust Litigation 2010 WL 1253741, at *3 (S.D.N.Y. 2010) (Finding an appeal bond of $ 50,000 appropriate to cover taxable costs); Berry v. Deutsche Bank Trust Co. Ams., 632 F.Supp.2d 300, 308 (S.D.N.Y. 2009) (same); Baker v. Urban Outfitters, Inc., No. 01 civ. 5440, 2006 WL 363592, at *1 (S.D.N.Y. Dec. 12, 2006) (same). The Court sees no justification for adopting a more restrictive view of appropriate costs.
In short, the factors that guided the Court's prior determination as to an appeal bond remain essentially the same: the appeal is meritless, the Gielatas have exhibited bad-faith conduct, the Gielatas pose a risk of nonpayment and they have the financial ability to pay a bond. Accordingly, both parties' requests for changes in the appeal bond are denied.
IV. Conclusion
In conclusion, for the foregoing reasons, the Court hereby confirms its Order of February 14, 2019, denying Class Plaintiffs' motion for sanctions against the Gielatas, denying the Gielatas' motion to censure Class Plaintiffs' counsel, and denying all parties' motions for alterations to the previously-imposed appeal bond. The Clerk is instructed to close docket number 908.
SO ORDERED.

Unless otherwise indicated, case quotations omit all internal quotation marks, alterations, footnotes, and citations.

As discussed in this Court's prior opinion on sanctions, numerous courts have grappled with the problem of extortionate objectors. See, e.g., Pearson v. Target Corp., 893 F.3d 980, 982 (7th Cir. 2018) (describing "objector blackmail" in class actions); In re Ivan F. Boesky Sec., 948 F.2d 1358, 1368 (2d Cir. 1991) (discussing how objectors "constituting...an infinitesimal fraction of the classes as a whole, and pursuing weak claims, have injured all classes by this appeal"); In re Initial Public Offering Sec. Litig., 728 F.Supp.2d 289, 295 (S.D.N.Y. 2010) ("concur[ring] with numerous courts that have recognized that professional objectors undermine the administration of justice by disrupting settlement in the hopes of extorting a greater share of the settlement for themselves and their clients").

Specifically, Haynes suggested the creation of three subclasses: "(1) purchasers of Petrobras Securities traded on a domestic exchange, (2) purchasers of Petrobras Securities through domestic transactions that require evidence beyond the bright-line domestic exchange prong of Morrison, and (3) purchasers through foreign transactions." H. Obj. at 8.

Of course, the Court of Appeals may yet determine that the argument was waived by the Gielatas.

The Gielatas argued that Class Plaintiffs' motion for dismissal "should be denied as moot because [Class Plaintiffs] failed to file its brief by the Court-ordered due date and therefore the appeal is already dismissed" and that the Second Circuit should defer settling the appeal costs to "retain the opportunity to affirm and endorse" this Court's decision as to the timing of Class Plaintiffs' fee award payments.

Setting a Rule 7 bond therefore requires the district court to "prejudge[ ]" the merits of the appeal. Adsani v. Miller, 139 F.3d 67, 79 (2d Cir. 1998).