**John EASTCOTT, Plaintiff,**

v.

**HASSELBLAD A/S, Hasselblad USA Inc., and B & H Photo & Electronics Corp., Defendants.**

No. 11 Civ. 5383 (JSR).

United States District Court,
S.D. New York.

Sept. 25, 2012.

Douglas Charles Wyatt, Douglas William Wyatt, Wyatt, Gerber & O'Rourke LLP, New York, NY, for Plaintiff.

Kyle Bradford Fleming, Mark Cromwell Johnson, Renner, Otto, Boisselle, & Sklar, LLP, Cleveland, OH, for Defendants.

## MEMORANDUM ORDER

JED S. RAKOFF, District Judge.

Contrary to the apparent view of plaintiff and his counsel, a legal forum is not the place to play a shell game.

The opportunity for such shenanigans arose when, during the course of this patent infringement lawsuit, plaintiff John Eastcott, a professional photographer, deposed the expert witnesses of defendants Hasselblad A/S, Hasselblad USA Inc. (collectively "Hasselblad"), and B & H Photo & Electronics Corp ("B & H"). Pursuant to Federal Rule of Civil Procedure 26(b)(4)(E), defendants subsequently requested reimbursement in the amount of $13,552.50 for the time their expert witnesses spent preparing for and attending those depositions. Eastcott and his counsel, Douglas C. Wyatt, Esq., ignored the requests for two months and then raised dubious objections to the requests that they later withdrew. But when defendants threatened further action to obtain payment, Eastcott and his counsel sent defendants an invoice that purported to bill defendants $17,000 for the depositions of Eastcott and his wife, also a photographer. The invoice was such an obvious sham that defendants, after attempting to resolve the matter directly with Eastcott, filed a motion seeking (1) to compel Eastcott to pay $18,770.53 for defendants' expert depositions; (2) to require Eastcott to reimburse defendants' attorney's fees for the expenses associated with having to secure this payment through the Court; and (3) to impose sanctions against Eastcott

and his counsel for "fabricating the charges on the 'invoice.' " Defendants' Motion for Payment of Expert Fees dated May 11, 2012 ("Defs.' Mot.") at 1–2.

After reviewing full briefing and oral argument, the Court hereby grants defendants' motion, as follows: (i) Eastcott is ordered to promptly reimburse defendants $18,520.53 for the depositions of defendants' expert witnesses; (ii) defendants are not required to pay Eastcott for any of the fees associated with Eastcott's purported invoice; (iii) sanctions in the amount of $12,815.20 are imposed on Eastcott and his counsel, jointly and severally, for creating, submitting, and continuing to rely on the sham invoice; and (iv) the portion of the sanctions equal to defendants' attorney fees in securing this relief shall be paid to them, and the rest to the Clerk of the Court.

The aforementioned relief is warranted by the following findings of fact and conclusions of law: On August 2, 2011, Eastcott brought this patent suit against defendants, alleging that Hasselblad had infringed his patent on a tilt-shift lens adapter and that B & H had marketed the infringing product.[1] In response to interrogatories, Eastcott listed himself and his wife, Yva Momatiuk, as the two persons with factual knowledge of the infringement. Defendants' Reply Brief dated May 23, 2012 ("Defs.' Rep. Br.") at 3. Accordingly, defendants' counsel, Mark Johnson, Esq., contacted Eastcott's counsel, Douglas C. Wyatt, Esq., to arrange depositions. Declaration of Mark C. Johnson in Support of Motion for Payment of Expert Fees dated May 23, 2012 ("Johnson Decl.") ¶ 11. After Johnson determined by phone that Wyatt's New York City office appeared to be Eastcott's preferred location for his deposition, defendants noticed the deposition of Eastcott for December 20, 2011 at Wyatt's office. Id. ¶ 12.

In pretrial discussions between the parties, Eastcott indicated that he planned to submit an "expert" report on damages. On December 5, 2011, Eastcott served this report, which he had authored himself. On December 15, this Court granted Eastcott permission to supplement this report by December 16, which he did. Id. ¶¶ 13–14. On December 17, defendants sent Eastcott a Second Supplemental Notice of Deposition. Id. The notice asked Eastcott to bring to his December 20 deposition a copy of the documents upon which he relied to form the opinions in the supplemented expert report. Id.; Plaintiff's Response Brief dated May 17, 2012 ("Pl.'s Resp. Br.") Ex. 5.

During Eastcott's deposition, he asserted that he was qualified to testify as an expert on patent infringement damages. Pl.'s Resp. Br. Ex. 6 at 9:8. Although Eastcott acknowledged that he would have been unqualified to testify as an expert a year earlier, he alleged that since that time he had learned about licensing agreements and reasonable royalties. Defs.' Rep. Br. Ex. J, Deposition of John Eastcott, Dec. 20, 2011 ("Eastcott Dep.") at 25. Still, Eastcott could not identify any "authoritative literature" on the subject, Pl.'s Resp. Br. Ex. 7 at 53–54, nor could Eastcott identify any relevant case law on damages, Eastcott Dep. at 15–19. Moreover, Eastcott did not bring to the deposition any of the documents requested by defendants'

---

1. By separate Memorandum Order issued September 24, 2012, 892 F.Supp.2d 557, 2012 WL 4372886 (S.D.N.Y. Sept. 24, 2012), the Court granted defendants' motion for summary judgment, dismissing all of plaintiff's claims with prejudice. The Court, however, retains jurisdiction over the collateral matters that gave rise to this Memorandum Order and over any subsequent proceedings relating thereto.

Second Supplemental Notice. *Id.* at 30–32.

> JOHNSON: I requested that you be here with paper. Is there a reason why you haven't?
>
> WYATT: Objection. Mark, we received this [Second Supplemental Notice] yesterday.... [Y]ou're asking for a litany of documents—sorry. This is too late.
>
> JOHNSON: I received the expert report on Friday. Two days later, I supplemented the notice....
>
> . . .
>
> WYATT: Mr. Eastcott is not prepared to go through the documents that you requested yesterday.

*Id.*

In fact, Eastcott was not prepared to testify at all regarding how he formed the opinions of his supplemented expert report. Rather, as his counsel stated in response to this Court's later questions about why Eastcott did not answer questions about the expert report at his December 20th deposition, "Your Honor, we understood that Mr. Eastcott was testifying that day as a fact witness." Transcript of Oral Argument, Feb. 21, 2012 ("2/21/12 Tr.") at 19.

Defendants also deposed Eastcott's wife, Yva Momatiuk. Defendants served a subpoena on Momatiuk on December 27, 2011. Pl.'s Resp. Br. Ex. 9. Although the subpoena requested an in-person deposition for Momatiuk, the parties subsequently agreed that the deposition would be taken by telephone. Johnson Decl. ¶ 17. Nevertheless, Momatiuk traveled to plaintiff's counsel's office in New York for the deposition. *Id.* The deposition lasted less than one hour. Defs.' Mot. at 2. In response to questions about her knowledge of patent law, Momatiuk stated that she was not able to provide an expert opinion. Pl.'s Resp. Br. Ex. 10, Deposition of Yva Momatiuk, Jan. 10, 2012 ("Momatiuk Dep.") at 19–22. She stated that she did not know why she was identified as a person with knowledge of the alleged infringement, but stated, "I think because I am married to John." *Id.* at 21–22.

Meanwhile, in January 2012, Eastcott deposed two of defendants' expert witnesses: Andrew D. Finger and Anders Poulsen. Finger subsequently billed defendants $395 per hour for his 12 hours of preparation, deposition testimony, and travel to and from New York City. Defs.' Mot. Ex. A. Poulsen billed defendants $250 per hour plus expenses for 35.25 hours of preparation, deposition testimony, and travel. *Id.* On January 9, defendants sent Finger's invoice to Eastcott, and on January 29, defendants sent Poulsen's invoice to Eastcott. The invoices totaled $13,552.50 because defendants sought reimbursement only for their experts' time and did not seek reimbursement for travel costs and expenses. *Id.* On February 6, 2009, Johnson sent Wyatt a follow-up email stating that Wyatt had not responded to Finger or Poulsen's invoices, even though Johnson had sent them, respectively, a month and a week earlier. *Id.*

Despite that follow-up email and the fact that defendants had identified the Federal Rule of Civil Procedure (Rule 26(b)(4)(E)) under which they sought reimbursement, Eastcott did not respond to the invoices until March 16, 2012. On that day, Eastcott sent two one-page letters to defendants raising various, largely conclusory, objections to defendants' invoices. Defs.' Mot. Ex. B. For example, Eastcott argued that the two hours of preparation time and the travel time invoiced by Finger were "unreasonable and inappropriate." *Id.* Eastcott also objected on the ground that "the rate charged is not a reasonable rate to be paid by an individual such as Mr. Eastcott." *Id.* He raised nearly identical objections to Poulsen's bill. *Id.* On March 22, Johnson responded in detail to East-

cott's objections and again asked for reimbursement, this time adding that defendants would include the experts' travel expenses if Eastcott did not timely comply. Defs.' Mot. Ex. C.; *see E.E.O.C. v. Johnson & Higgins, Inc.,* 93 Civ. 5481, 1999 WL 32909, at *1–3 (S.D.N.Y. Jan. 21, 1999) (authorizing inclusion of travel expenses in Rule 26 reimbursement).

Instead of sending a check or raising further objections, however, Wyatt wrote an email to Johnson on April 19th. The email, in its entirety, stated, "[a]ttached please find Eastcott's invoice for attendance at defendant's depositions." Defs.' Mot. Ex. D. Attached to the email was an invoice for $17,000 entitled "[e]xpert witness testimony re: optical adapter for controlling the angle of the plane of focus and its unique application in professional photography." *Id.* Eastcott's invoice billed defendants for a "[f]ull day of [Eastcott's] testimony [at] $8,000/day" plus five hours of travel time "billed at half day rate" for a total of $10,500. *Id.* Eastcott's invoice also billed defendants for a "[h]alf day of [Momatiuk's] testimony" and five hours of travel time for a total of $6,500. *Id.* During a May 15, 2012 telephone conference with the Court, Eastcott's counsel stated that he had "provided an invoice that would address defendants' invoices," because his invoice was "commensurate" with defendants'. On that call, Eastcott's counsel also expressly withdrew his objections to defendants' expert fees, a position he subsequently reconfirmed.

On May 11, defendants filed the instant motion. Defendants requested an order that (1) compels Eastcott to pay $18,770.53 for the defendants' expert depositions (now including travel time and expenses); (2) requires Eastcott to reimburse defendants' attorney's fees for the cost of having to secure this payment through the Court; and (3) imposes sanctions against Eastcott and his counsel for "fabricating the charges on the 'invoice.' " Defs.' Mot. at 1–2.

In response, Eastcott argues that he does not need to reimburse defendants for the time of their expert witnesses because his own invoice is "commensurate." But Eastcott's invoice is wholly improper, not to say an outright sham.

Federal Rule of Civil Procedure 26 authorizes a party to "depose any person who has been identified as an expert whose opinions may be presented at trial." Fed.R.Civ.P. 26(b)(4)(A). If a party deposes an identified expert, the rule then requires the deposing party "to pay the expert a reasonable fee for time spent in responding to discovery." Fed.R.Civ.P. 26(b)(4)(E).

In determining whether an expert fee request is "reasonable," some federal courts employ an eight-factor test. *See E.E.O.C. v. Johnson & Higgins, Inc.,* 93 Civ. 5481, 1999 WL 32909, at *3 (S.D.N.Y. Jan. 21, 1999) (laying out the eight-factor test). Here, however, no such complicated test is necessary, because in this case, plaintiff and his counsel, after ignoring and then, on the basis of frivolous objections, refusing to pay defendants' reasonable fees, concocted a fraudulent scheme to attempt to evade payment through the fabrication of a false and misleading invoice.

■ Eastcott's invoice billed defendants $6,500 for Momatiuk's deposition and $10,500 for Eastcott's deposition. Even if this were a legitimate invoice, which it is not, there would still be a threshold question of whether the plaintiff can seek reimbursement for expert deposition costs even though he concedes that neither purported expert—Eastcott or Momatiuk—billed the plaintiff himself for his or her time. Rule 26 requires that a deposing party "pay the expert a reasonable fee for time spent in responding to discovery under Rule 26(b)(4)(A) or (D)." Fed.R.Civ.P.

26(b)(4)(E). This language does not specify whether it would be "reasonable" for one party to have to pay an expert that the other party has retained for free. *Id.* The commentary to the rule's 1970 amendments, however, indicates that the purpose of the rule is to reimburse parties for costs that they have actually incurred. It states, "[t]hese provisions for fees and expenses meet the objection that it is unfair to permit one side to obtain without cost the benefit of an expert's work *for which the other side has paid,* often a substantial sum." Fed.R.Civ.P. 26 cmt. (emphasis added). Moreover, Wright and Miller summarize the rule, formerly known as Rule 26(b)(4)(C) as follows:

> One argument against discovery of expert information has been that it is unfair to let one party have *for free what the other party has paid for.* But that unfairness can be remedied, in an appropriate case, by requiring the party seeking discovery to share the cost. This attitude is embodied in Rule 26(b)(4)(C), which seeks a fair allocation of expert expenses between the retaining party and the one seeking discovery.

8A Charles Alan Wright, et al., Federal Practice & Procedure § 2034 (3d ed.) (emphasis added). Therefore, the Court finds that the plaintiff cannot seek reimbursement under this rule for costs that he did not incur.

■ Even assuming arguendo, however, that the rule permitted a party to seek reimbursement for costs that it had not incurred based on the value of its experts' time,[2] the plaintiff's invoice is so clearly improper that it amounts to a fraud.

The motive for the fabrication is not hard to find. After months of ignoring and refusing to reimburse defendants for their legitimate expert expenses, Eastcott and his counsel came up with an illicit strategy: to fabricate an invoice that would cancel out defendants' legitimate invoices. But, motive aside, plaintiff's invoice bears no relation to reality:

To begin with, Eastcott charged defendants for five hours of travel time at $500 per hour. Pl.'s Resp. Br. Ex. 4. While travel time is compensable under Rule 26, *see E.E.O.C.,* 1999 WL 32909, at *3, compensation for travel time is not appropriate when a party's expert witness merely had to travel to the party's counsel's offices, especially when the party elected for the deposition to take place there. *See, e.g., Fleming v. United States,* 205 F.R.D. 188, 189 (W.D.Va.2000); *McBrian, Inc. v. Liebert Corp.,* 173 F.R.D. 491, 493 (N.D.Ill. 1997). Moreover, since Eastcott concedes that he was being deposed that day at least partially as a fact witness, *see* 2/21/12 Tr. at 19–20, Eastcott would have traveled to the same location even if he had not held himself out as an expert witness. Therefore, the five hours of travel time are not compensable.

Second, plaintiff admits that Eastcott's deposition did not last eight hours, and thus there is no reason to bill for a "full day of testimony." Although defendants' experts plainly billed by the hour, as is appropriate, plaintiff and his counsel appear to argue that time can only be divided into half-day and full-day increments. Lawyers are used to billing their clients in six minute increments, and it is improper for plaintiff's counsel to bill for a full-day of testimony when the deposition did not last for eight hours.

---

2. This argument has limited persuasive force when the expert is also a party, but it lacks any persuasive force when the expert is not a party (as in the case of Momatiuk). Otherwise, a party could receive windfall payments for time that he neither spent nor paid for. Even if Momatiuk were an expert, she is not a party, and the plaintiff did not pay her for her time.

Third, Eastcott's fee of $1,000 per hour is wholly unreasonable. Ironically, Eastcott initially objected to the charged rates of defendants' experts, even though those expert witnesses billed at $250 and $395 per hour. Eastcott asserts that he based his $1,000 per hour rate on a letter from National Geographic stating that it pays $3,000–$13,000 per day to commercial photographers when those photographers are on a photography shoot. *See* Transcript of Oral Argument, May 30, 2012 ("5/30/12 Tr.") at 8–10. But even if the Court were to accept this letter, this is evidence only of what Eastcott could bill when he was selected for a commercial photography shoot, and it has no bearing on what he could charge for his purported expert opinion on patent-infringement damages.[3]

Moreover, based on his deposition testimony and his lack of expertise on damages, it is clear that Eastcott could not reasonably bill $1,000 per hour for his purported expertise on damages. It is unimaginable that a party would hire, at $1,000 per hour, an expert who was not qualified to calculate damages in 2010, who had received no formal training in calculating damages since that time, who could not provide specific answers to questions about damages, and who did not propose to discuss the documents upon which he based his expert report.

Fourth, the $6,500 billed for Momatiuk is even more plainly an utter fraud. Neither party "identified" Momatiuk as an expert. In his letter brief, Eastcott now argues that Momatiuk was providing him "with expert assistance in anticipation of litigation." Pl. Resp. Br. at 3. It is unclear what such "expert assistance" means, but it is clear that Momatiuk was not an expert. Eastcott states that defendants "qualified Momatiuk as an expert," Pl. Resp. at 2, but the portion of the transcript that he cites for that proposition directly undermines that assertion, *see* Momatiuk Dep. at 6. Defendants' counsel simply asked Momatiuk whether she was a photographer and how long she had been a photographer. *See id.* There is no basis in Rule 26 for Eastcott's requested reimbursement for Momatiuk's testimony.

Moreover, even if Momatiuk had been an expert, Eastcott's purported invoice would still be unreasonable. Eastcott's purported invoice bills defendants for five hours of travel time at $500 per hour and a "[h]alf day of testimony" at $1,000 per hour, Pl.'s Resp. Br. Ex. 4, even though defendants deposed Momatiuk by telephone for less than an hour, Defs.' Mot. at 2. The fact that Eastcott essentially rounded up Momatiuk's deposition time from less than one hour to four hours is further evidence that Eastcott ensured that the invoice would be "commensurate" with defendants' invoices, so that, if his ruse had succeeded, he would be relieved of his obligation to pay defendants' expert costs. There can be no doubt that this is unreasonable, not to say a fraud, a sham, and a travesty.

The Court therefore concludes that Eastcott's request for compensation for his and his wife's testimony is unreasonable and cannot be approved. Eastcott has

---

**3.** Indeed, even if the plaintiff could seek reimbursement for the value of his time as an expert witness, and even if Eastcott could bill defendants for a full day of deposition testimony, if one looks at Eastcott's average daily salary to calculate his opportunity cost he would be entitled to at most several hundred dollars in reimbursement. Eastcott's federal tax return reported $79,679.91 in income in 2010, which averages to around $1500 *per week*. *See* Def. Ex. K. at 24. Even if the Court were to credit Eastcott's unsubstantiated claim that the entity controlled by him and his wife made $290,000 in 2010, *see id.*, that still averages to a little more than a $1,000 per *work day* for the work of *two* photographers.

dropped his challenges to the reasonableness of fees for defendants' expert witnesses.[4] Accordingly, Eastcott must promptly reimburse defendants for their experts' fees and costs in the sum of $18,520.53.

Having granted defendants' motion for reimbursement, the Court must next consider whether to impose attorney's fees and sanctions on plaintiff and/or his counsel for their conduct in regards to these expert fees. Defendants seek attorney's fees and sanctions under Federal Rule of Civil Procedure 37. Defs.' Reply Br. at 3. On its face, however, that rule does not apply to motions for reimbursement of experts' fees. The rule states that if a motion to compel disclosure or discovery is granted, the court can award the movant reasonable expenses. Fed.R.Civ.P. 37(a)(5)(A). The instant motion is not a motion to compel disclosure or discovery. In case there were any lingering doubts, Rule 37(a)(3) specifies the particular discovery rules that it applies to, and lists Rules 26(a), 30, 31, 33 and 34. Fed. R.Civ.P. 37(a)(3). It does not include any mention of Rule 26(b)(4)(E), which makes sense because a motion brought under that rule is not a motion to compel disclosure or discovery. Therefore, sanctions and attorney's fees are not available under Rule 37.[5]

■ This does not end the inquiry, however. The Court has a " 'well-acknowledged' inherent power ... to levy sanctions in response to abusive litigation practices." *Roadway Express Inc. v. Piper,* 447 U.S. 752, 765, 100 S.Ct. 2455, 65 L.Ed.2d 488 (1980) (quoting *Link v. Wa-*

bash *R. Co.,* 370 U.S. 626, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962)). A court may impose attorneys' fees and other sanctions against both a party and his counsel who have litigated in bath faith, because "the power of a court over members of its bar is at least as great as its authority over litigants." *Id.* at 766, 100 S.Ct. 2455. After determining that sanctions are not available under Rule 37, it is appropriate for this Court to examine whether sanctions are available under its inherent powers. *DLC Mgmt. Corp. v. Town of Hyde Park,* 163 F.3d 124, 135–36 (2d Cir.1998). In order to impose sanctions pursuant to its inherent powers, this Court must conclude that the conduct in question was "without a colorable basis" and undertaken in bad faith, *i.e.,* "motivated by improper purposes such as harassment or delay." *Schlaifer Nance & Co., Inc. v. Estate of Andy Warhol,* 194 F.3d 323, 336 (2d Cir. 1999).

■ Here, the Court concludes that the conduct in question—specifically the plaintiff's and his counsel's submission of the phony invoice and their continued reliance on that invoice—was without a colorable basis and was undertaken in bad faith. Therefore, sanctions are warranted.

When Eastcott and his counsel received defendants' invoices, they first ignored them for two months. Next, without any justifiable basis, they tried and failed to get defendants to reduce the amount of reimbursement they were seeking. When that did not work, they turned to a different and fraudulent strategy. They sent defendants a purported invoice that had no

---

**4.** The Court notes that plaintiff has repeatedly sought to change his position as to whether he was challenging defendants' invoices. Although Eastcott twice informed the Court that he was not challenging those invoices, nonetheless, in an abundance of caution, the Court finds that defendants' invoices are, in any event, proper and reasonable.

**5.** Moreover, Rule 11 does not allow for discovery sanctions. *See* Fed R. Civ. P. 11(d) ("This rule does not apply to disclosures and discovery requests, responses, objections, and motions under Rules 26 through 37.").

legitimate basis, and was simply a ruse intended to cancel out defendants' invoices.[6]

Indeed, nearly every part of the invoice serves as further proof that it lacked any colorable basis and was prepared and submitted in bad faith. Eastcott and his counsel billed for a full day's testimony for Eastcott even though he testified for less than a full day and at least part of his testimony that day was as a fact witness. They billed for a half a day for Eastcott's wife, even though she was deposed for less than an hour and was clearly not an expert. They billed at a rate of $1,000 per hour for Eastcott and his wife, without any basis to bill at that rate as an expert. Eastcott had previously objected that the rates of defendants' two experts were too high. But the rates that Eastcott and his counsel billed for Eastcott's time and that of his wife were two to three times the rates charged by defendants' experts. Eastcott and his counsel also billed for a half day of travel for Eastcott, even though he conceded that he was already testifying that day as a fact witness (and despite the fact that the deposition took place at his counsel's office). Eastcott and his counsel billed for a half day of travel for Eastcott's wife, even though she was deposed via telephone at her counsel's office, where she had chosen to be deposed.

For all of these reasons, it is clear that Eastcott and his counsel prepared and sent the invoice to defendants in bad faith, and that Eastcott's and his counsel's continued reliance on this invoice in these proceedings was a fraudulent attempt to avoid paying defendants for their fees.

Since there was no colorable basis for Eastcott and his counsel to seek $17,000 in payments from defendants, and since both Eastcott and his counsel submitted and relied on the invoice in bad faith, the Court imposes sanctions, jointly and severally against both Eastcott and his counsel. In this regard, defendants incurred reasonable attorney's fees and costs of $6,407.85 in bringing this motion.[7] Pursuant to its inherent power, the Court imposes sanctions on Eastcott and his counsel in the sum of double that amount, *i.e.*, $12,815.70, one half of which is to be paid to defendants and one half to the Clerk of the Court.

In sum, Eastcott is hereby ordered to pay defendants $18,520.53 in reimbursement of defendants' expert fees and costs,[8] such payment to take the form of a certified check made payable to Mark C. Johnson, Esq., and to be delivered to Mr. Johnson's office by no later than October 15, 2012. Additionally, Eastcott and his counsel, Douglas, C. Wyatt, Esq., are hereby ordered to pay, jointly and severally, sanctions in the amount of $12,815.20, of which half (*i.e.*, $6,407.85) is to be paid to defendants, in the form of a certified check made payable to Mark C. Johnson, Esq., to be delivered to Mr. Johnson's office by no later than October 15, 2012, and the other half (*i.e.*, $6,407.85) is to be paid to the Court, in the form of a certified check made payable to the Clerk of the Court,

---

**6.** Defendants' original invoices totaled $13,500, but defendants had warned Eastcott that it would include travel costs and expenses of around $4,000 if Eastcott continued to refuse to reimburse defendants. Defs' Mot. Ex. A; Defs' Mot. Ex. C.

**7.** Johnson spent 16 hours on this dispute at a rate of $315 per hour, and his plane trip to the hearing on this dispute cost $1,131.60.

**8.** Defendants offered to credit Eastcott an hour of Poulsen's deposition time. Defs.' Reply Br. at 3 n. 5. Therefore, the Court has reduced defendants' bill by $250. The Court approves this reduction and notes that if Eastcott were entitled to any compensation for his deposition, he would likely be entitled to approximately $250. *See* supra note 2.

S.D.N.Y., to be delivered to the Clerk's Office by no later than October 15, 2012. The Court will retain jurisdiction to enforce this order, and plaintiff and his counsel are warned that any failure to timely comply with this order may result in further sanctions.

SO ORDERED.